[No. 27607. Department Two. November 8, 1939.]

SANNA D. ADAMS, *Respondent*, v. CHARLES F. ERNST, *as Director of the State Department of Social Security, et al., Appellants.*[1]

[1]Reported in 95 P. (2d) 799.

*The Attorney General* and *Harry L. Parr, Assistant,* for appellants.

*Frank L. Cathersal,* for respondent.

STEINERT, J.—This is an appeal by the director of the department of social security and by the state from a judgment and decree of the superior court reversing an order of the department upon a claim for old age assistance, and commanding the director in his official capacity to make provision for the payment of a specified amount, which, according to the court's finding, was owing to the claimant.

In order to understand the questions involved upon the appeal, it is necessary to set forth in some detail the proceedings which antedated and culminated in the judgment and decree.

On August 19, 1935, respondent, Sanna D. Adams, a resident of Pierce county, made application for old age assistance and, after an investigation of her needs and circumstances, was granted aid to the extent of twenty dollars per month beginning October 1, 1936. The old age assistance law in effect at that time was contained in chapter 182, Laws of 1935, p. 855, now

appearing in amended form as Rem. Rev. Stat. (Sup.), § 9998-1 *et seq.* Thereafter, following a further investigation, the administrator of the Pierce county welfare department canceled the allowance of assistance to respondent as of September 1, 1938, upon the ground that her daughter and son-in-law, with whom she was then living, were able to provide for her needs. At that time, the old age assistance law had, in some respects, been amended by chapter 156, Laws of 1937, p. 548, which, like the act of 1935, now appears in amended form, and is included within, Rem. Rev. Stat. (Sup.), § 9998-1 *et seq.*

Respondent, being dissatisfied with the action of the county administrator, requested a hearing before the board of county commissioners of Pierce county. A hearing was granted, and at its conclusion the commissioners recommended that the grant of assistance to respondent be continued as originally made. However, the supervisor of the division of old age insurance, being of the opinion that he could not follow the recommendation of the county commissioners, affirmed the prior decision of the county administrator.

From that ruling, respondent duly and regularly appealed to the director of the state department of social security, one of the appellants herein. A hearing was had on November 18, 1938, at which time testimony was taken, and thereafter, on December 31, 1938, the director made findings to the effect that respondent, although otherwise eligible for old age assistance, was living with her daughter and son-in-law, who were partially able to provide for her needs. Upon such findings, the director rendered a decision confirming a pending recommendation of the Pierce county welfare department that respondent be granted old age assistance in the sum of fourteen dollars per month to

meet her needs, according to the department's established budget of itemized necessary living expenses.

Respondent, on January 26, 1939, filed in the superior court of Pierce county a notice of appeal from the decision of the director. The cause came on for hearing on February 21, 1939, at which time the official record of the proceedings taken before the department was read and considered by the court. It appears from the final judgment herein that, at the conclusion of the hearing on February 21, 1939, the court orally announced its decision in favor of respondent, but the record before us does not disclose the details of that decision, nor does it disclose that any minute entry or journal entry of such decision was ever made.

On February 25, 1939, the then existing statute with reference to old age assistance was amended in certain respects by chapter 25, Laws of 1939, p. 80, now appearing as part of, and included within, Rem. Rev. Stat. (Sup.), § 9998-1 *et seq.*

Thereafter, on March 6, 1939, the superior court made and entered findings of fact and conclusions of law to the effect that respondent had met the eligibility requirements for old age assistance; that her daughter and son-in-law were unable to provide for her needs; that the final decision of the director should be reversed; that respondent was entitled to recover the sum of thirty dollars per month for old age assistance from and after July 1, 1937; that the total deficiency owing respondent from the department on March 1, 1939, amounted to $306; and that respondent was entitled to recover her costs and disbursements.

On March 24, 1939, the court signed and entered an order and judgment based on the findings and conclusions theretofore made, directing that a copy of the

findings, conclusions, and judgment be forwarded to the director, and commanding him to proceed in accordance therewith.

On the following day, March 25, 1939, the court, having been advised that its former order and judgment had failed to incorporate a money judgment in favor of respondent, thereupon signed and entered an amended order and judgment, in which, in addition to the provisions of the former judgment, it ordered that respondent have a money judgment in the sum of $306 against the state of Washington and the director.

After the judgment had been served on him, the director, on April 1, 1939, filed a written return calling attention to the amendatory statute which had become effective on February 25, 1939, this being subsequent to the court's oral announcement but prior to the signing and entry of the findings, conclusions, and judgment. The conclusion of the director, as set forth in his return, was that the 1939 act barred the payment of any claim not made on the basis of need as defined in the recent act; and that, consequently, the judgment for thirty dollars per month, which was rested upon the provisions of the former statute, without a finding of need as that term was defined in the 1939 statute, was likewise barred by the act.

The whole matter was then brought to the attention of the court on April 12, 1939, (1) on the *motion of the appellants* that an order and judgment, *nunc pro tunc,* be entered in the cause correcting and modifying the judgment of the court theretofore entered on the twenty-fifth day of March, 1939, by removing therefrom any terms creating liability as for a money judgment against the state of Washington or the director personally, (2) on the motion of appellants to strike from the order and judgment all reference to allow-

ance of costs, and (3) on the oral demurrer of respondent to the sufficiency of the return of the director.

After argument, discussion, and consideration, the court on April 21, 1939, signed and entered a judgment, designated as an "order, judgment and decree, *nunc pro tunc*," which granted appellants' motions above set forth, and sustained, in part, respondent's demurrer to the return of the director, resulting in the continuance of appellants' liability, under the latter judgment, to provide for the payment to respondent of the sum of $306 as accrued pension deficiencies. The *nunc pro tunc* judgment further recited, as a finding, that the oral decision announced by the court on February 21, 1939, constituted the actual judgment in the cause; and that the entry of the judgment on March 24, 1939, as amended by the judgment of March 25, 1939, was merely a procedural formality by which the oral decision was reduced to writing. The judgment of April 21, 1939, concluded by commanding the director to proceed in accordance with the original findings of the court and to provide for the payment to respondent of the sum of $306 in the ordinary course of conduct of the department. It is from this last judgment that this appeal was taken.

Appellants' first contention, and the only issue presented by their statement of the questions involved, is that the court had no jurisdiction to enter a *nunc pro tunc* judgment so as to make it effective as of the day when the oral decision was rendered.

The inefficacy of the contention is made apparent by the facts as hereinbefore stated. Appellants' motion for a *nunc pro tunc* order was directed specifically to the judgment of March 25, 1939, and not to the oral decision of February 21, 1939. The judgment of April 21, 1939, rendered pursuant to appellants' motions and respondent's demurrer to the director's return, does

not purport to relate back to, or become effective as of, the day of the oral decision, as appellants seem to contend, but merely modifies the judgment of March 25, 1939. Respondent's counsel concedes this, for in his brief appears the following:

"Nowhere in the judgment is there any statement relating back the effective judgment to the *21st day of February 1939,* nor to any other date previous to April 21, 1939. The only effect to be given the latter judgment is to treat it as amending the judgment of the 24th day of March, 1939, as amended by that judgment entered the 25th day of March, 1939, *since prior to that time there was no other judgment* entered in the records of this cause." (Italics ours.)

We agree with respondent that, in so far as the retroactive feature of the final judgment is concerned, it referred only to the amendatory judgment of March 25, 1939, and not to the prior oral decision.

The real question in the case is, as suggested by respondent, whether she had a *vested right* in and to those particular payments alleged to have become due under then existing laws, that is, the acts of 1935 and 1937, *supra.* It is conceded by respondent that, if she did not have a vested right in and to such payments, then her claim should have been determined according to the amendatory act of 1939, *supra;* and that, consequently, the final judgment, resting upon a finding of certain qualifications which would now not necessarily entitle her to aid, must be reversed.

The act of 1935 created a state-wide system of old age assistance. According to its provisions, every person who resided in this state, "if in need," was entitled to such assistance from the state, provided that such person had attained the age of sixty-five years; was a citizen of the United States, and had been a resident of the state of Washington for at least five years within the ten years immediately preceding his applica-

tion; did not have income adequate to provide a reasonable subsistence compatible with decency and health; had not made a voluntary assignment or transfer of property for the purpose of qualifying for such assistance; was not an inmate of a public or private home for the aged or of an institution of a custodial, correctional, or curative character; and was not, because of his physical or mental condition, in need of continued institutional care.

The department of public welfare was required by the act to provide adequately for those eligible for old age assistance, the amount and nature thereof to be determined by the department, but not to be *in excess* of thirty dollars per month to each recipient. The department was authorized to make rules and regulations necessary for the carrying out of the provisions of the act. Applications for such assistance were required to be investigated, and upon completion of the investigation, the department was required to decide whether the applicant was eligible under the act and to determine the manner and amount of assistance, the manner of paying or providing it, and the date on which the assistance would begin; the decision of the department was to be final. The act also directed that all assistance grants should be reconsidered from time to time, and authorized the department to change the manner or amount of assistance according to the recipient's circumstances and, for cause, to cancel or suspend payments. Any assistance granted under the act was inalienable by assignment or transfer and exempt from levy or execution.

Section 21 of the act, p. 862 (Rem. Rev. Stat. (Sup.), § 9998-21), which has a vital bearing upon the determination of this controversy, reads as follows:

"All assistance granted under this act shall be deemed to be granted and to be held subject to the

provisions of any amending or repealing act that may hereafter be enacted, and no recipient shall have any claim for compensation, or otherwise, by reason of his assistance being affected in any way by such amending or repealing act."

The remaining provisions of the act are not material to a determination of the question before us.

In 1937, the legislature passed an act amending certain sections, and repealing other sections, of the 1935 law. The principal changes made by the later act included the following: (1) The department of public welfare was referred to as the department of social security; (2) the applicant was no longer required to be a citizen of the United States; (3) his income must have been less than $360 a year; (4) the monthly allowance of thirty dollars was fixed as a minimum, instead of a maximum, amount; (5) provision was made for appeal from the decision of the department, after a hearing, to the superior court. In all other respects, the provisions of the 1935 act, as we have above outlined them, including § 21 as previously quoted, were retained and continued to be the law.

Construing the act of 1937, this court held in *Conant v. State*, decided November 18, 1938, and reported in 197 Wash. 21, 84 P. (2d) 378, that a person "in need" and eligible to receive old age assistance was one who possessed the qualifications specifically stated in the act, regardless of the willingness or financial ability of relatives to provide the necessities of life for such person. That case further held that the right to such assistance accrued coincidentally with the filing of the application.

As a result of the decision in the *Conant* case, the legislature, in February, 1939, passed an act declaring its intent with respect to old age assistance granted under the authority of the 1937 act, reestablishing the

monthly sum of thirty dollars as the maximum amount to be paid a recipient, and defining the term "in need." Chapter 25, Laws of 1939, effective February 25, 1939.

Section 1 of that act, p. 80, provides:

"The legislature hereby expressly declares its intent to be that the old age assistance authorized to be granted to individuals by chapters 156 and 180, Laws of 1937, or their antecedent acts, shall not be available to persons as a matter of right but rather that such old age assistance shall be available only to persons who are in need thereof as that term is hereinafter in this act defined. The State of Washington hereby disclaims liability for any and all claims heretofore filed or entered, or which may hereafter be filed or entered against it, wherein the state is sought to be held for grants of old age assistance to persons or individuals as a matter of right and not upon the basis of need as defined in this act, and no such claim shall ever be recognized as a valid claim against the State of Washington or any political subdivision thereof."

Section 3, p. 81, after requiring the proper official to make the necessary investigation and render his decision within forty-five days after receipt of the application, then proceeds:

"Old age assistance shall be granted only to such persons as are in need. A person shall be considered to be in need within the meaning of this act who does not have resources sufficient to provide himself and dependents with food, clothing, shelter and such other items as are necessary to sustenance and health. 'Resources' are hereby defined to be (1) assistance in cash, in kind, or in support given by relatives, friends or organizations, (2) ability of relatives within the classes described in this section to contribute to such support: . . . and (3) real and tangible personal property (excluding the home, household goods and personal effects of the applicant, and all foodstuffs produced by the applicant for himself and family), insurance policy cash surrender values and loan values (excluding cash surrender values less than $300 and

loan values less than $100 under insurance policies which have been in effect for more than five years), cash income or cash in hand, bank deposits, savings accounts, postal savings, stocks and bonds, notes, mortgages and all other property of whatsoever nature.

"The amount of assistance to be granted in each individual case shall be determined on a budgetary basis, taking into account the need of the applicant and his dependents and the resources of the applicant and of persons responsible for care of the applicant. 'Persons responsible for care of the applicant' are hereby declared to be husband or wife, and sons and daughters of legal age residing within the state who are financially able to contribute to the support of the applicant in whole or in part, the determination of which shall be made by the officer administering old age assistance."

At this point, we call attention to the fact that the decision of the director, under date of December 31, 1938, was made upon the basis of his interpretation of the 1937 act, which was in accordance with the express provisions of the act subsequently passed in 1939. It is also to be noted that, in the 1939 act, the state *disclaimed liability* for any and all claims not resting upon need as defined in that act.

Turning again to the 1935 act, which is the basis of respondent's application, we note that, by § 21, above quoted, the assistance granted by the act was to be subject to any amending or repealing act. While the concluding language of that section is somewhat inexact, we think its context clearly indicates that no claim, in any form, for assistance under the act shall be further recognized or payments made thereon, if the claim be thereafter in any way adversely affected by any subsequent amending or repealing act.

The term "vested right" is not easily defined and has been used by the courts to express various shades of meaning. However, the term has been com-

monly held to connote "an immediate fixed right of present or future enjoyment" and "an immediate right of present enjoyment, or a present fixed right of future enjoyment." *Pearsall v. Great Northern R. Co.*, 161 U. S. 646, 40 L. Ed. 838, 16 S. Ct. 705; *Cusick v. Feldpausch*, 259 Mich. 349, 243 N. W. 226; *McCleery v. Woodmen of the World*, 136 Ore. 407, 297 Pac. 345, 299 Pac. 1004; *Baker v. Tulsa Building & Loan Ass'n*, 179 Okla. 432, 66 P. (2d) 45; 11 Am. Jur. 1199, § 370; 67 C. J. 238. See, also, *New Whatcom v. Roeder*, 22 Wash. 570, 576, 61 Pac. 767.

In the *Pearsall* case, *supra*, quotation is made from Cooley's Principles of Const. Law, 332, as follows:

" 'Rights are vested, in contradistinction to being expectant or contingent. They are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. They are expectant, when they depend upon the continued existence of the present condition of things until the happening of some future event. They are contingent, when they are only to come into existence on an event or condition which may not happen or be performed until some other event may prevent their vesting'."

In *Merchants Bank v. Garrard*, 158 Ga. 867, 124 S. E. 715, 38 A. L. R. 102, it was held that

"To be vested, in its accurate legal sense, a right must be complete and consummated, and one of which the person to whom it belongs cannot be divested without his consent."

We think that the 1935 act did nothing more than to confer upon a certain class of persons a statutory privilege entitling them to receive assistance from the state under the provisions of that act. However, if that privilege is to be dignified by calling it a right, it is one which, by the very act which created it, is expressly subject to amendment or repeal. It is not a

vested right in the sense that it is property or that it has become fixed and of which the beneficiary cannot be deprived without his consent; rather is it a qualified right, contingent upon the continued existence of the law which gave it original substance.

Since, as we now hold, the right or privilege conferred by the 1935 act was not, in a legal sense, a vested right, but was, by § 21 of that act, expressly made subject to the provisions of any amending or repealing act, and since the state has exercised the prerogative reserved to it in § 21 and has, by the act of 1939, disclaimed liability for any and all claims of right based on need other than as defined in the later act, it follows that respondent's claim cannot now be allowed or paid, except on the basis, and to the extent, of its recognition under the 1939 act. Even though there may have been accruals upon a claim preferred under either the 1935 act or the 1937 act, payment thereof has been rightfully disclaimed. Disbursements by the director are now controlled by the 1939 act.

Respondent, however, asserts that the *Conant* case, *supra,* is controlling here. That case, in so far as respondent's rights under the 1935 act, as amended by the 1937 act, are concerned, has no application to the present situation, for no question of the amendment or repeal of the law was there involved.

Respondent also contends that her right became vested by reason of her having obtained a judgment. As already stated, at the time that the 1939 act became effective, there was no judgment in this case. The most that respondent had then obtained was an oral ruling by the court. The oral decision, the terms of which are not disclosed by the record, was not a judgment. It was nothing more than an announcement by the court of its conclusions on the evidence, and was subject to change by the court at

any time before the entry of a formal judgment. *Robertson v. Shine*, 50 Wash. 433, 97 Pac. 497. See, also, *Russell v. B. Schade Brewing Co.*, 49 Wash. 362, 95 Pac. 327; *Codd v. Von Der Ahe*, 92 Wash. 529, 159 Pac. 686; *Shaughnessy v. Northland Steamship Co.*, 94 Wash. 325, 162 Pac. 546, Ann. Cas. 1918B, 655; *State ex rel. Echtle v. Card*, 148 Wash. 270, 268 Pac. 869, 59 A. L. R. 519; *State v. Crockett*, 158 Wash. 152, 290 Pac. 873; *State ex rel. Crockett v. Sutton*, 159 Wash. 307, 293 Pac. 469; *State ex rel. Mountain Development Co. v. Superior Court*, 190 Wash. 183, 67 P. (2d) 861; *State v. Lambert*, 199 Wash. 367, 91 P. (2d) 1023; *State v. Diamond Tank Transport, Inc.*, 200 Wash. 206, 93 P. (2d) 313. The 1939 act became effective prior to the entry of the judgment and hence is controlling of the method and amount of assistance.

The cause was heard by the superior court solely upon the record transmitted to it by the department of social security. That record is now before us on the appeal. The decision of the administrative board must be deemed to be *prima facie* correct and must prevail unless it can be said that the evidence preponderates against it. We have carefully considered the record and are of the view that the decision is supported by the evidence and is in accordance with the mandate of the 1939 act.

The judgment is reversed.

BEALS and JEFFERS, JJ., concur.

GERAGHTY, J., concurs in the result.

BLAKE, C. J. (dissenting)—Having qualified for a pension under Laws of 1935, chapter 182, p. 855, respondent became entitled to a monthly allowance of thirty dollars, which became vested each month until the effective date of Laws of 1939, chapter 25, p. 80. *Conant v. State*, 197 Wash. 21, 84 P. (2d) 378.

268

It is not necessary to obtain a judgment to enforce a right that has vested prior to the repeal or amendment of a statute under which the right accrues. See *Ettor v. Tacoma,* 57 Wash. 50, 106 Pac. 478, 107 Pac. 1061; 228 U. S. 148, 57 L. Ed. 773, 33 S. Ct. 428; 77 Wash. 267, 137 Pac. 820.

I dissent.

