**ANDERSON v. UNITED STATES.**

No. 13594.

United States Court of Appeals
Ninth Circuit.

May 22, 1953.

As Modified July 27, 1953.

C. E. Hughes, Seattle, Wash., for appellant.

J. Charles Dennis, U. S. Atty., John E. Belcher, Asst. U. S. Atty., Seattle, Wash., for appellee.

Before HEALY, BONE and POPE, Circuit Judges.

BONE, Circuit Judge.

This is an appeal from a judgment dismissing appellant's action against the United States for an accrued annuity under Public Law 319, 78th Cong., 2d Sess., approved May 29, 1944, 58 Stat. 257 et seq., as amended (hereinafter called "the Act").[1] This Act was passed in recognition of the services of civilian officials and employees who were engaged in and about the construction of the Panama Canal during the construction period from 1904 to 1914. The Act provides in substance that such of these officials and employees as meet certain service and citizenship requirements, not here material, shall be entitled to annuities determined on the basis of their salary and the length of their service, the annuities to commence on the effective date of the Act. §§ 2, 4. The widow of a deceased employee or official who, if alive, would be entitled to the annuity is also made an annuitant, provided she lived with the employee or official in the Canal Zone for at least one year during the construction period. § 4.

Appellant brought this action as executor of the estate of Catherine C. Anderson. The case comes to us on a question as to the sufficiency of the complaint and we therefore accept its allegations as true. Catherine C. Anderson, as the widow of Charles H. Anderson, qualified as an annuitant under the Act by reason of her husband's service and citizenship and her residence with him in the Canal Zone. Mrs. Anderson first learned of the Act on or about December 28, 1950.[2] She thereupon executed and mailed to the Civil Service Commission (the proper federal agency) her application for the accrued amount of the annuity which she claimed to be due her. Receipt of the application was acknowledged on January 9, 1951. Mrs. Anderson died shortly thereafter, on March 1, 1951.

On May 23, 1951, a so-called "Annuity Certificate" was duly issued under the seal of the Civil Service Commission, in which it was certified that Mrs. Anderson had been granted an annuity at the rate of $913.32 per annum. Pursuant to the Annuity Certificate, the Chief Disbursing Officer of the Civil Service Commission caused to be issued a check for $6,398.31 drawn on the Treasurer of the United States, payable to the order of Mrs. Anderson.

On June 18, 1951, appellant deposited the check in a Seattle, Washington, bank for credit to the estate of Mrs. Anderson. The Treasury refused to honor the check. Appellant's complaint asked judgment against the United States in the amount of $6,169.98.[3] Appellee, by way of affirmative defense, alleged that the annuity was a gift, personal to the annuitants specified in the statute, and that it therefore lapsed on the death of Mrs. Anderson prior to certification and payment.

Appellant moved to strike this defense on the ground that it failed to state a defense to his complaint. The lower court denied this motion and entered judgment dismissing the complaint. This appeal followed. See the lower court's opinion in D.C., 112 F.Supp. 524.

Though the point was not raised either in the court below or in this court, there is some question whether the district court had jurisdiction of this action. Jurisdiction was founded upon 28 U.S.C.A. § 1346(a) (2), which confers upon the district courts, concurrently with the Court of Claims, jurisdiction of claims against the United States not exceeding $10,000 where the claim is based upon any Act of Con-

1. The Act was formerly found in 48 U.S.C.A. §§ 1373–1373g, but is now set out in Temporary Supplement No. 2 to Cumulative Supplement No. 2 to the Canal Zone Code. See 48 U.S.C.A. §§ 1372–1374d, Historical Note.

2. The complaint alleges only that Charles H. Anderson had died at some time prior to Mrs. Anderson's application, without specifying the date. If Mr. Anderson survived the passage of the Act, he apparently made no claim for the annuities.

3. That the judgment demanded is less than the amount of the check issued is doubtless explained by the fact that the check was issued some months after Mrs. Anderson's death. Under the Act the annuity would, of course, terminate on Mrs. Anderson's death.

gress. That provision, as construed in Dismuke v. United States, 297 U.S. 167, 56 S.Ct. 400, 80 L.Ed. 561, gave the court below jurisdiction, unless the annuity sought is a "pension" within the meaning of 28 U.S.C.A. § 1346(d) (1), which excepts suits on claims for pensions from the jurisdiction of the district courts.

■ The word "pension" is an ambiguous term at best. It has been loosely defined in the federal courts as a bounty or gratuity bestowed as a token of the government's benevolence. See, e. g., United States ex rel. Burnett v. Teller, 107 U.S. 64, 68, 2 S.Ct. 39, 27 L.Ed. 352; Morgan v. United States, 5 Cir., 115 F.2d 426, 427. If this is the meaning of the word as used in § 1346(d) (1), then the annuity here sought falls squarely within the terms of that provision. The Act was passed 30 years after the rewarded services had been completed and after all legal obligations of the government for those services had been discharged. The annuity is a gift, the nation's token of thanks for distinguished and valuable services performed under conditions of peril and hardship. See Dewling v. United States, 101 F.Supp. 892, 121 Ct. Cl. 635.

A study of the few cases dealing with the question, however, reveals that the word "pension" in 28 U.S.C.A. § 1346(d) (1) has never been construed so broadly. Subsection (d) (1) was part of 28 U.S.C.A. § 41(20) prior to the revision of the Judicial Code in 1948. The pension provision in § 41(20) was contained in the sentence dealing with war claims. So far as we have been able to discover, § 41(20) was never held applicable to any government grants save pensions and compensation to veterans of the Army and Navy. See e. g., Morgan v. United States, 5 Cir., 115 F.2d 426; Smith v. United States, 4 Cir., 57 F.2d 998. It was held inapplicable to annuities payable under the Civil Service Retirement Act in Dismuke v. United States, supra, on the ground, inter alia, that the Act described the benefits as "annuities" and not as "pensions." See also

DeMaurez v. Squier, 9 Cir., 144 F.2d 564, certiorari denied 323 U.S. 762, 65 S.Ct. 95, 89 L.Ed. 610. The fact that the Civil Service Retirement Fund was supplied by payroll deductions, while the annuities here in question are paid out of Congressional appropriations, does not make these cases inapposite. For it has been often held that government retirement benefits are not made a matter of right, or any less a gratuity, by virtue of the fact that the payments are financed by payroll deductions, the rationale being that the sums "deducted" are never in fact paid or made subject to the disposition of the employees, but are retained by the government as general public funds in which the employees can have no right. Pennie v. Reis, 132 U.S. 464, 10 S.Ct. 149, 33 L.Ed. 426; Griffith v. Rudolph, 54 App.D.C. 350, 298 F. 672; MacLeod v. Fernandez, 1 Cir., 101 F.2d 20, certiorari denied Toste v. Macleod, 308 U.S. 561, 60 S.Ct. 72, 84 L.Ed. 471; cf. Dodge v. Board of Education, 302 U.S. 74, 58 S.Ct. 98, 82 L.Ed. 57; In re Goodwin, 6 Cir., 57 F.2d 31.

In determining the meaning of the term "pension" the courts appear to have been more concerned with the history of § 41 (20) than with analysis of its terms. In the Dismuke case, supra, the Supreme Court remarked, 297 U.S. at page 170, 56 S.Ct. at page 402, that the Act withholding jurisdiction of suits on claims for pensions had been passed "at a time when the term 'pensions' commonly referred to the gratuities paid by the government in recognition of past services in the Army or Navy." And the Court of Claims, from which jurisdiction of pension claims has also been withheld under 28 U.S.C.A. § 1501, in holding that the word did not apply to the retirement pay of federal judges, said that "it is to be doubted whether Congress in excepting from our jurisdiction claims for pensions had in mind anything more than those pension claims of war veterans over which the Pension Bureau was given jurisdiction." Johnson v. United States, 79 F.Supp. 208, 211, 212, 111 Ct.Cl. 750.[4]

4. See also Williams v. United States, 3 Cir., 23 F.2d 792, 793, where the court held that an action upon an adjusted service certificate issued to a World War

■ In the Act Congress has termed its grants "annuities," and we assume that it did so advisedly. In light of the authorities discussed, we conclude that these are not "pensions" within the meaning of 28 U.S.C.A. § 1346(d) (1) and that the court below therefore had jurisdiction of this action.

We come now to the merits. The question presented is whether the executor of the estate of a deceased annuitant can recover the amount of an annuity for which the annuitant had made proper application during her life, but which was not paid or certified by the Commission prior to the annuitant's death.

■ Appellee makes much of the fact that the annuity is a gift, but this means no more than that the legislature may withhold or terminate it at its pleasure. No more than this was decided in the case of Adams v. Ernst, 1 Wash.2d 254, 95 P.2d 799, on which the court below relied. This does not answer our problem. The Act in § 2 provides that designated persons "shall be entitled to receive" the annuities. The provision is mandatory, expressed in terms of the rights of the annuitants. So long as Congress maintains the grant, the statutory right thus created is enforceable like any other.

■ When does this right accrue? Section 3 of the Act provides that the annuitants shall make application for the annuity "in such form as the Civil Service Commission may prescribe * * *. Upon receipt of satisfactory evidence, the Civil Service Commission shall forthwith adjudicate the claim of the applicant, and, if title to annuity be established, a proper certificate shall be issued * * *." The court below was of the view that the an-

nuitant can have no right to the annuity until the claim is *adjudicated* by the Commission and a certificate issued. We do not agree. When the annuitant has filed a proper application he has done all that he can do and all that he is required to do. The right must accrue at that time. Cf. Ewing v. Gardner, 6 Cir., 185 F.2d 781, affirming D.C., 88 F.Supp. 315, modified without discussion of this point, 341 U.S. 321, 71 S.Ct. 684, 95 L.Ed. 968. The same court which rendered the opinion in Adams v. Ernst, supra, on which the court below and appellee rely, has held that the right to a statutory gratuity vests at the time satisfactory application is made therefor. Conant v. State, 197 Wash. 21, 84 P.2d 378; see also Finley v. Marion Co., 81 Or. 294, 159 P. 557.

If there be doubt as to this construction of the Act, we might consider where the construction urged by appellee would lead us. Taking the view that the right of an annuitant is conditional upon the Commission's *adjudication* of his claim, what would be the effect of a wrongful denial of that claim by the Commission? The answer must be that the annuitant could have no right to the annuity in such event, for the condition would hardly be satisfied by an adjudication that the claim is invalid. And to accept this argument we must be prepared to say that on claims made under the Act the decision of the Commission is final; for if no right can be asserted by an annuitant after an adverse decision by the Commission, it is the Commission which has the first and last say.

■ The argument cannot be maintained. On the assumed facts there is no doubt that had Mrs. Anderson lived, and had the Civil Service Commission denied

---

I veteran, payable in 20 years or upon the veteran's death, patently a gratuity, was not outside its jurisdiction as being a claim for a pension, on the ground that it was in substance a "paid-up endowment life insurance policy" and an unconditional obligation of the government. The Supreme Court reversed, but without discussing the question whether the benefit sought was a pension. United States v. Williams, 278 U.S. 255, 49 S.Ct. 97, 73 L.Ed. 314. In Lemly v. United States, 75

F.Supp. 248, 249, 109 Ct.Cl. 760, the Court of Claims held that the retirement pay of a disabled naval officer was not a pension, on the ground that it was continuation of active pay on a reduced basis. The court said: "An examination of the Acts of Congress through the years reveals that when the word 'pension' was used it meant 'pension' and when 'retirement pay' was used it meant 'retirement pay.' "

her claim, she could have successfully prosecuted an action for the annuity in the courts. In the Dismuke case, supra, the Supreme Court had before it the question whether a claimant who had been refused an annuity by an administrative officer under the Civil Service Retirement Act had a remedy in the district court under 28 U.S.C.A. § 41(20) (now, as revised, 28 U.S.C.A. § 1346). The Civil Service Retirement Act was similar in its provisions regarding proof and adjudication of claims to the Act here in question. The court of appeals had held that disposition of these claims had been entrusted solely to the administrative officer. But the Supreme Court, which referred to the claimant's right as a "statutory right" and a "statutory benefit," disagreed, saying:

"But the power of the administrative officer will not, in the absence of a plain command, be deemed to extend to the denial of a right which the statute creates, and to which the claimant, upon facts found or admitted by the administrative officer, is entitled. * * * The Commissioner is required by section 13, 'upon receipt of satisfactory evidence' of the character specified 'to adjudicate the claim.' This does not authorize denial of a claim if the undisputed facts establish its validity as a matter of law, or preclude the courts from ascertaining whether the conceded facts do so establish it." 297 U.S. at pages 172, 173, 56 S.Ct. at page 403.

This passage disposes of the contention that the right of the annuitant waits upon administrative adjudication of his claim. The rule stated assumes that the right exists, if at all, prior to and independently of any administrative action upon it. If discretion as to the payment of claims were reposed in the Commission by the Act, there would be a different question, a question which we need not decide. The Act provides for no more administrative discretion and gives no greater finality to administrative action than did the statute involved in the Dismuke case. Mrs. Anderson's right to the annuity was perfected when she filed proper application for it.

Inaction or denial of the claim by the Commission could not delay or defeat the right, and favorable adjudication, evidenced by issuance of an annuity certificate, could only formally acknowledge a right already established. Cf. Gardner v. Ewing, U.S. D.C.S.D.Ohio, W.D., 88 F.Supp. 315, 323, affirmed 6 Cir., 185 F.2d 781, modified without discussion of this point, 341 U.S. 321, 71 S.Ct. 684, 95 L.Ed. 968.

█ It only remains to inquire whether this right lapsed upon Mrs. Anderson's death. The right was one of property. It therefore passed to her estate, unless we can find that Congress intended otherwise. The Act is silent on the question. The court below relied upon the legislative intent to make the grant personal to the specified annuitants, as evidenced by § 7 of the Act, which provides that "None of the annuities or moneys mentioned in this Act shall be assignable, either in law or equity, or be subject to execution, levy, lien, attachment, garnishment, or other legal process."

This provision only insures that the annuitant alone shall enjoy the benefits of the Act during his life. Under a statute containing a similar provision, a personal representative was held entitled to recover Social Security benefits for which a wage earner had made application prior to his death. Ewing v. Gardner, supra; cf. Beers v. Federal Security Administrator, 2 Cir., 172 F.2d 34. Though these cases did not involve claims for gratuities, Congress in the statutes there concerned, as here, had made the claims payable for life to certain persons and no others. No reason of policy can be discerned for attributing to Congress a different intent as to survival of the claim here pressed.

It is doubtless true that the annuities were intended to be so far personal that no right thereto could be asserted by the personal representative of a deceased annuitant who had not made application for the annuity during his life. But to go further and hold that after application is made the right lapses upon the death of the annuitant would make fruition of the right dependent upon the whim of the Commission, and upon the speed and efficiency with

which it acts. Payment of the annuity depends, appellee tells us, upon the annuitant's outliving the processing of his claim. A clerical error, a misplaced document, the pressure of other work, we are told, must be allowed to defeat the right of those whom Congress has thought deserving of reward, and frustrate their natural desires to pass on what is rightfully theirs to the objects of their bounty. We do not think Congress so intended.

We hold that on the basis of the allegations in the complaint the right of Mrs. Anderson to the annuity passed to her estate upon her death and may be enforced by her executor. The court therefore erred in denying appellant's motion to strike appellee's defense and in dismissing appellant's complaint.

The judgment is reversed and the cause remanded for proceedings not inconsistent with this opinion.