IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| DARREN L. ARENDS, | No. 85870-0-I |
| Appellant, | ORDER GRANTING MOTION FOR RECONSIDERATION AND MOTION TO PUBLISH AND WITHDRAWING OPINION AND SUBSTITUTING OPINION |
| v. | |
| STATE OF WASHINGTON, | |
| Respondent. | |

Appellant Darren Arends moved for reconsideration of the opinion filed on March 25, 2024. Respondent State of Washington filed an answer. Additionally, appellant and respondent jointly moved for publication of the opinion.

The court has determined that appellant's motion for reconsideration should be granted and it has reconsidered its prior determination not to publish the opinion, finding it is of precedential value and should be published.

Now, therefore, it is hereby

ORDERED that the appellant's motion for reconsideration and the parties joint motion to publish are granted; and it is further

ORDERED that the unpublished opinion filed on March 25, 2024 is withdrawn; and it is further

ORDERED that a substitute published opinion be filed.

FOR THE COURT:

_____
Judge

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DARREN L. ARENDS, | No. 85870-0-I |
| Appellant, | DIVISION ONE |
| v. | |
| STATE OF WASHINGTON, | PUBLISHED OPINION |
| Respondent. | |

SMITH, C.J. — Under former RCW 9.41.040, individuals could petition to restore their firearm rights in their county of residence or in the court that entered the relevant prohibition on firearm possession. In early 2023, the legislature restricted the appropriate venue for firearm restoration petitions to the county that entered the prohibition on firearm possession.

A month after the new statute took effect, Darren Arends petitioned to restore his firearm rights in Snohomish County Superior Court, his county of residence. The superior court denied his petition, citing improper venue. On appeal, Arends claims that the former firearm restoration statute applies to him because his right to petition for restoration "vested" before the new statute took effect. Therefore, he maintains, he can file his petition in his current county of residence rather than in Davison County, South Dakota, the county that entered the prohibition on Arends's right to possess a firearm. Because the legislature did not intend to create a vested right to petition for firearm restoration, we disagree and affirm.

FACTS

Legislative Background

Before July 2023, former RCW 9.41.040 governed the process of restoring an individual's right to possess a firearm.  Under that statute, there were two appropriate venues in which to file a restoration petition: (1) the court of record that ordered the petitioner's prohibition on possessing a firearm; or (2) the superior court in the county in which the petitioner currently resided.  Former RCW 9.41.040(4) (2005).

In early 2023, the legislature amended RCW 9.41.040 and added a new section to chapter 9.41 RCW.  LAWS OF 2023, ch. 295.  Under the new section, RCW 9.41.041, firearm restoration petitions can only be filed in the superior court of the county that entered a prohibition on possession.  LAWS OF 2023, ch. 295, § 4(3)(a).  In its findings related to the amendments, the legislature noted that its updates to the laws governing the unlawful possession of firearms and the restoration of firearm rights aimed to "reduc[e] the risks of lethality and other harm associated with gun violence, gender-based violence, and other types of violence."  LAWS OF 2023, ch. 295.  The legislature also found that easy access to firearms is a risk factor that increases the likelihood of individuals engaging in future violence and presenting further risk to public safety.  LAWS OF 2023, ch. 295, §1(4).

On July 23, 2023, Substitute House Bill 1562 took effect, repealing former RCW 9.41.040(4) and enacting RCW 9.41.041.  LAWS OF 2023, ch. 295.

2

<u>Present Case</u>

In August 2023, Darren Arends petitioned the Snohomish County Superior Court to restore his firearm rights. His right had been restricted due to his conviction for grand theft in Davison County, South Dakota. Although Arends petitioned the court after RCW 9.41.041 took effect, Arends claimed that former RCW 9.41.040(4) applied to him because he had completed the former statute's requirements before the new statute took effect. Arends contended that once he completed the former statute's requirements, his right to petition for restoration "vested," thereby allowing him to proceed under the former statute.

The State opposed Arends's petition, arguing that Snohomish County Superior Court was not the proper venue because the prohibition had not been entered there. The State also contended that Arends had not yet completed his sentencing conditions. The court denied Arends's petition and adopted the State's position in full.[1]

Arends appeals.

<u>ANALYSIS</u>

<u>Vested Right to Petition Under Former RCW 9.41.040</u>

Both parties contend that whether RCW 9.41.041 operates prospectively or retroactively is determinative of whether a right vested under former RCW 9.41.040. Arends maintains that because the precipitating event that triggers application of former RCW 9.41.040 is completion of the statutory

---

[1] In support of its order, the court attached the State's response to Arends's petition rather than explain its reasoning.

requirements, and because he completed the requirements before RCW 9.41.041 took effect, his right to petition for restoration of his right to possess a firearm "vested" and his claim under the former statute is preserved. The State counters that completion of the statutory requirements does not result in a "vested" right because filing of the restoration petition is the precipitating event, not completion of the statutory requirements.[2] The State therefore maintains that Arends is subject to the new statute because he filed his petition after it took effect.

We disagree with both parties. The relevant inquiry here is not whether the new statute operates prospectively or retroactively or what constitutes a precipitating event, but, rather, whether the subject matter and language of former RCW 9.41.040 indicate that Arends possessed a "vested right" to petition for restoration once he met the statutory requirements for restoration of his purported right to possess a firearm under the former statute. Because the legislature intended firearm restoration procedures to further public safety, we conclude that Arends's right to petition for restoration did not "vest" when he completed the statutory requirements of former RCW 9.41.040.

The term "vested right" is not easily defined, but "has been commonly held to connote 'an immediate, fixed right of present or future enjoyment.' " Adams v. Ernst, 1 Wn.2d 254, 264-65, 95 P.2d 799 (1939) (quoting Pearsall v. Great N.

---

[2] Our Supreme Court previously determined, in dicta, that the precipitating event for eligibility of restoration is when the statutory requirements are met, not when the petition is filed. State v. Dennis, 191 Wn.2d 169, 177, 421 P.3d 944 (2018).

Ry. Co., 161 U.S. 646, 673, 16 S. Ct. 705, 40 L. Ed. 838 (1896)). A "vested right, entitled to protection from legislation, must be something more than a mere expectation based upon an anticipated continuance of the existing law; it must have become a title, legal or equitable, to the present or future enjoyment of property, a demand, or a legal exemption from a demand by another." Godfrey v. State, 84 Wn.2d 959, 963, 530 P.2d 630 (1975) (emphasis omitted). "[A] vested right must be definite, as opposed to an assumed expectation that one will be able to exercise a certain privilege in the future." Wash. State Ass'n of Counties v. State, 199 Wn.2d 1, 19, 502 P.3d 825 (2022). " '[A] mere expectation based upon an anticipated continuance of the existing law' is insufficient to vest a legal right." State v. Shultz, 138 Wn.2d 638, 646, 980 P.2d 1265 (1999) (emphasis omitted) (quoting State v. Hennings, 129 Wn.2d 512, 528, 919 P.2d 580 (1996)).

A right may vest in a number of ways, such as by final judgment or contract. Wash. State Ass'n of Counties, 199 Wn.2d at 19; see, e.g., Bailey v. Sch. Dist. No. 49, 108 Wash. 612, 614, 185 P. 810 (1919) (final judgment); Scott Paper Co. v. City of Anacortes, 90 Wn.2d 19, 32, 578 P.2d 1292 (1978) (contracts). Rights may also vest upon completion of statutory conditions in certain limited circumstances. State v. T.K., 139 Wn.2d 320, 334, 987 P.2d 63 (1999) (T.K. II).[3]

---

[3] Because we cite to both the Court of Appeals' and Washington State Supreme Court's decision in State v. T.K., we refer to the Supreme Court's decision as T.K. II and the Court of Appeals' decision as T.K. I.

The subject matter of the statute and the statutory language guide our analysis of whether completion of the statutory conditions results in a vested right. See T.K. II, 139 Wn.2d at 331-32, 335. This inquiry implicates statutory interpretation, a question of law that we review de novo. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). When interpreting a statute, our purpose is to determine and give effect to the legislature's intent, and we begin with the plain language of the statute. Campbell & Gwinn, 146 Wn.2d at 9-10. "We derive the legislative intent of a statute solely from the plain language by considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole." State v. Dennis, 191 Wn.2d 169, 172-73, 421 P.3d 944 (2018). When interpreting a criminal statute, "we give it a literal and strict interpretation." State v. Delgado, 148 Wn.2d 723, 727, 63 P.3d 792 (2003).

1. Statutory Interpretation

The statute at issue, former RCW 9.41.040, designates the requirements that an individual must meet before petitioning the court:

> An individual may petition a court of record to have his or her right to possess a firearm restored . . .

> [i]f the conviction or finding of not guilty by reason of insanity was for a felony offense, after five or more consecutive years in the community without being convicted or found not guilty by reason of insanity or currently charged with any felony, gross misdemeanor, or misdemeanor crimes, if the individual has no prior felony convictions that prohibit the possession of a firearm counted as part of the offender score under RCW 9.94A.525.

Former RCW 9.41.040(4)(b), (a)(ii)(A).

6

After these requirements are met, an individual "may" petition the court for relief. Former RCW 9.41.040(4)(b). Once the superior court determines that the statute's enumerated requirements are met, the court's role is purely ministerial; it must grant the petition. State v. Swanson, 116 Wn. App. 67, 78, 65 P.3d 343 (2003). However, the process of restoration is one of legislative grace; there is no Second Amendment right to firearm right restoration. See, e.g., ch. 9.41 RCW (restoration of firearm rights exclusively governed by statute); see also District of Columbia v. Heller, 554 U.S. 570, 626, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008) ("Like most rights, the right secured by the Second Amendment is not unlimited.").

Here, the subject matter of the statute and the legislature's intent are determinative of whether a vested right exists upon completion of the statutory requirements. The statute creates a court-supervised procedure for firearm right restoration to further public safety by reducing gun violence. At the heart of the statute is public safety, clearly evidenced by the legislature's repeated amending of the statute to add more stringent requirements for restoration. See, e.g., H.B. REP. ON H.B. 3095, 60th Leg., Reg. Sess. (Wash. 2008) (additional notice required when person who was prohibited from possessing firearm due to involuntary commitment has right to possess restored); FINAL B. REP. ON H.B. 1498, 61st Leg., Reg. Sess. (Wash. 2009) (imposing burden of proof for persons who have been involuntarily committed); FINAL B. REP. ON H.B. 1455, 62nd Leg., Reg. Sess. (Wash. 2011) (restricting venue where petition to restore rights may be filed); FINAL B. REP. ON S.B. 5205, 66th Leg., Reg. Sess. (Wash.

7

2019) (persons found incompetent to stand trial and who have history of violent acts must prove each restoration requirement by preponderance of evidence); FINAL B. REP. ON S.H.B. 1562, 68th Leg., Reg. Sess. (Wash. 2023) (restricting venue where petition to restore rights may be filed).

The legislature's actions also evidence an intent to protect the public. For example, in the wake of our Supreme Court's Dennis decision, which interpreted the statutory requirement that a petitioner be crime-free for five years before petitioning for firearm restoration to mean *any* crime-free period following felony conviction, the legislature amended the firearm restoration statute to clarify that the five-year period must immediately precede filing of a restoration petition. S.H.B. 1562, 68th Reg. Sess. (Wash. 2023) ("The legislature also finds it would be helpful to refine statutory language that was at issue in the Washington state supreme court's decision in State v. Dennis, 191 Wn.2d 169 (2018)."); RCW 9.41.041(2)(a)(i).

Moreover, when the legislature most recently updated the restoration procedures, it noted that the stricter venue provisions were intended to "reduc[e] the risks of lethality and other harm associated with gun violence, gender-based violence, and other types of violence." LAWS OF 2023, ch. 295. The legislature also found that easy access to firearms presents a risk to public safety. LAWS OF 2023, ch. 295, §1(4). To conclude that satisfaction of the statutory requirements results in an absolute right to petition for restoration of one's firearm rights runs contrary to the legislature's intent. The legislature has repeatedly evidenced that

gun violence is an important issue of public safety and has taken steps to make restoration of firearm rights increasingly difficult.

We conclude that Arends had an expectation that he could petition the court to restore his firearm rights once he complied with the statute, but not an absolute, vested right regarding restoration of those rights. At any point before he petitioned to restore his firearm rights, the legislature could have amended the law to prevent him from doing so. Settled law dictates that the expectation of being able to exercise a certain privilege in the future is insufficient to vest a legal right.

    2. <u>State v. T.K</u>

Still, Arends contends that <u>T.K.</u> II is dispositive of whether completion of statutory requirements results in a vested right. We disagree.

In <u>T.K.</u> II, the defendant pleaded guilty to first degree child molestation. 139 Wn.2d at 323. After T.K. completed the requirements of the disposition order, he petitioned the juvenile court to vacate his duty to register under the sex offender registration statute. <u>State v. T.K.</u>, 94 Wn. App. 286, 288-89, 971 P.2d 121 (1999) (<u>T.K.</u> I).[4] The court found that T.K. had been "fully rehabilitated" and entered an order ending his registration requirement. <u>T.K.</u> I, 94 Wn. App. at 289. At the time the court entered its order, T.K. was not eligible to request vacation or sealing of his conviction records under RCW 13.50.050 because two years had not yet passed from the date he was discharged from supervision. <u>T.K.</u> I, 94 Wn.

---

[4] The facts of <u>T.K.</u> II are drawn from the Court of Appeals decision because it includes more detail.

9

App. at 289. Before T.K. could petition to have his juvenile records sealed, the legislature changed the statutory requirements for sealing, increasing the requisite waiting period. T.K. II, 139 Wn.2d at 323-24. After the statute was amended, T.K. moved to expunge his juvenile record. T.K. I, 94 Wn. App. at 290. The juvenile court denied the motion, concluding that the updated statute applied. T.K. I, 94 Wn. App. at 290.

On appeal, this court reversed, determining that T.K.'s right to have his record expunged under the former statute "matured"[5] when he satisfied the conditions of expungement. T.K. I, 94 Wn. App. at 291. Our Supreme Court later affirmed, explaining that T.K.'s "right to sealing became absolute [i.e., vested] upon completion of the statutory conditions" after the two-year waiting period had expired. T.K. II, 139 Wn.2d at 334. The court compared the waiting period to a statute of limitations, noting that " '[u]ntil the statute has run it is a mere regulation of the remedy . . . subject to legislative control,' " but afterwards it is " 'a defense, not of grace, but of right . . . absolute and vested, . . . not to be taken away by legislative enactment.' " T.K. II, 139 Wn.2d at 332 (some alterations in original) (quoting State v. Hodgson, 108 Wn.2d 662, 668, 740 P.2d 848 (1987)). The court also considered the subject matter addressed by the statute and the mandatory language of the statute. Because T.K.'s right vested before the change in the law, our Supreme Court reasoned that the new law

---

[5] We briefly note that "matured" and "vested" are used interchangeably in vested rights analysis and possess substantially similar meanings. Compare T.K. I, 94 Wn. App. at 290 (referring to a right as "matured") with T.K. II, 139 Wn.2d at 332 (referring to a right as "vested").

could not retroactively require T.K. to meet stricter conditions for sealing his juvenile records. T.K. II, 139 Wn.2d at 334-35.

But T.K. does not stand for the proposition that completion of statutory requirements *always* resulted in a vested right. The Supreme Court in T.K. II considered the subject matter of the statute and the language of the statute when it concluded that T.K. possessed a vested right to have their convictions sealed. 139 Wn.2d at 331-32. Furthermore, since T.K. II, courts have not extended vested rights analysis outside the arena of sealing or vacation. Compare State v. D.S., 128 Wn. App. 569, 115 P.3d 1047 (2005) (vested right to have juvenile records sealed) and In re Pers. Restraint of Carrier, 173 Wn.2d 791, 272 P.3d 209 (2012) (vested right in vacated status of former conviction) with State v. Webb, 112 Wn. App. 618, 50 P.3d 654 (2002) (no vested right under former offender scoring statute); State v. Sell, 110 Wn. App. 741, 43 P.3d 1246 (2002) (no vested right to deferred DUI prosecution); State v. Varga, 151 Wn.2d 179, 86 P.3d 139 (2004) (no vested right in "washed out" status of prior convictions); In re Pers. Restraint of Martin, 129 Wn. App. 135, 118 P.3d 387 (2005) (no vested right to delay paying LFOs until after release); In re Pers. Restraint of Flint, 174 Wn.2d 539, 277 P.3d 657 (2012) (no vested right to remain in community custody).

Arends's assertion that there is "no conceptual difference between the juvenile sealing scheme and the firearm restoration scheme" is unpersuasive. The statutes at issue in T.K. II and the present case are markedly different. The juvenile sealing scheme aims to "limit public access to juvenile court records in

recognition of the unique purpose of juvenile courts to rehabilitate and reintegrate youth into society." State v. S.J.C., 183 Wn.2d 408, 419, 352 P.3d 749 (2015). The legislature has repeatedly recognized that " '[c]hildren are different' " from adults and that " 'our criminal justice system [must] address this difference when punishing children.' " State v. Anderson, 200 Wn.2d 266, 285, 516 P.3d 1213 (2022) (second alteration in original) (quoting In re Pers. Restraint of Ali, 196 Wn.2d 220, 225, 474 P.3d 507 (2020). Rather than restoring a right, the act of sealing *gives* juveniles new rights to protect their futures.

In contrast, the firearm restoration scheme is carefully structured to further public safety and prevent gun violence. Firearm restoration returns a right that was purposefully taken away to protect the public. Although the two statutes share some similarities, their vast difference in subject matter and legislative intent sets them apart. T.K. II is readily distinguishable from the case at hand.

Because we conclude that Arends did not possess a vested right to proceed under former RCW 9.41.040, we conclude that the court did not err in denying Arends's restoration petition.

We affirm.

_____
Smith, C.J.

WE CONCUR:

_____          _____
Feldman, J.          Bowman, J.

12