Lawrence W. GIBNEY, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

No. 19867.

United States District Court
S. D. California, Central Division.
Nov. 6, 1956.

---

On November 17, 1954 he applied for retirement under Section 691(d) of Title 5 U.S.C.A., relating to *investigatory personnel*. As the plaintiff did not have the recommendation of the Secretary of Treasury, the United States Civil Service Commission denied retirement. The action became final on October 10, 1956, when the Board of Appeals and Review of the United States Civil Service Commission affirmed the decision previously rendered by the Retirement Division of the Treasury Department. By this action the plaintiff seeks a money judgment of $35 a month for the period from March 1, 1955 to and including the month of September 1955, and of $23 a month from October 1, 1955 on, being the difference between the rate of retirement allowed him and that to which he claims to be entitled under Section 1(d) of the Retirement Act.[1] He also seeks a declaration to the effect that he is entitled to receive such additional monthly amount as a retirement allowance for the remainder of his natural life.[2]

### I

### The Jurisdiction of the Court

At the trial, counsel for the plaintiff sought to dismiss the claim for declaratory judgment.[3] However, as there was no separate claim stated on that ground,[4] but merely a prayer for such declaration, and the Government had pleaded as a defense the failure of the complaint to state a claim,[5] the matter was deferred for disposition after trial and submission. It is evident that this court has no jurisdiction to entertain an action of this character under the Declaratory Judgments Statute.

At times the Declaratory Judgments Statute has been used to determine the status of a person which an officer of the Government had denied.[6] But in those

Ernest R. Mortenson, Pasadena, Cal., for plaintiff.

Laughlin E. Waters, U. S. Atty., Max Deutz, Richard A. Lavine, Asst. U. S. Attys., Los Angeles, Cal., for defendant.

YANKWICH, Chief Judge.

The plaintiff, Lawrence W. Gibney, a resident of California, was a deputy collector of Internal Revenue from December 1, 1920 to October 27, 1926, and an Internal Revenue agent from November 1, 1926 to February 22, 1948, during which time he was attached to what is known as "the Fraud Unit". He was a technical adviser to the Regional Counsel's Office from February 22, 1948 to February 28, 1955, when he retired.

---

1. 5 U.S.C.A. § 691(d). The Section as it now reads is found in 62 Stat. Ch. 807, p. 1221 et seq., as amended by 63 Stat. Ch. 443, p. 609.
2. 28 U.S.C.A. §§ 2201, 2202.
3. 28 U.S.C.A. §§ 2201, 2202.
4. Rules 8(e) (2), 10(b), 18(a), Federal Rules of Civil Procedure, 28 U.S.C.A.

5. Rule 12(b), Federal Rules of Civil Procedure, 28 U.S.C.A.
6. Perkins v. Elg, 1939, 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320; McGrath v. Kristensen, 1950, 340 U.S. 162, 71 S.Ct. 224, 95 L.Ed. 173.

instances, the officer was within the jurisdiction of the court and had been made a party to the action. Here, the United States is the only defendant.

By statute the location of the Department of the Treasury and of the Secretary of the Treasury is "at the seat of government".[7] Neither the Secretary of the Treasury nor any other executive of his department or of the Civil Service Commission is a party to this action or is before the court. They would be indispensable parties to any judgment declaring the rights of the plaintiff under the Retirement Act.[8] More, regardless of any procedural question as to parties, the use of the Declaratory Judgments Statute to, in effect, invalidate an administrative regulation and action under it would be an expansion of judicial powers which the Congress did not intend to sanction by enacting this Act. It would be arrogating to ourselves, under this Act, supervisory powers over executive and administrative agencies which the Congress has not given to us.[9] However, the action for a money judgment is properly before the court under the Tucker Act.[10] The complaint seeks a money judgment in an amount less than $10,000 and satisfies all the requirements of actions instituted under that Act, as to claims founded upon an Act of Congress.[11]

So we come to the merits of the controversy.

## II
### The Merits of the Controversy

The controversy turns around the scope of Section 691(d) of Title 5 U.S.

C.A. which, so far as material, here reads:

"Any officer or employee * * * the duties of whose position are primarily the investigation, apprehension, or detention of persons suspected or convicted of offenses against the criminal laws of the United States (including any officer or employee engaged in such activity who has been transferred to a supervisory or administrative position) who is at least fifty years of age, and who has rendered twenty years of service or more in the performance of such duties (including the duties of a supervisory or administrative officer or employee) may, on his own application and upon the recommendation of the head of the department or agency in which he is serving, and with the approval of the Civil Service Commission, retire from the service; and the annuity of such officer or employee shall be equal to 2 per centum of his average basic salary for any five consecutive years of allowable service at the option of such officer or employee, multiplied by the number of years of service, not exceeding thirty years. The Civil Service Commission shall, upon recommendation by the head of the department or agency involved, determine whether such officer or employee is entitled to retirement under this subsection. In making such determination, the Commission shall give full consideration to the degree

7. 5 U.S.C.A. § 241.

8. De Pinho Vaz v. Shaughnessy, 2 Cir., 1953, 208 F.2d 70; Blackmar v. Guerre, 1952, 342 U.S. 512, 72 S.Ct. 410, 96 L. Ed. 534.

9. Love v. United States, 8 Cir., 1935, 108 F.2d 43, 49–50; Wilson v. Wilson, 4 Cir., 1944, 141 F.2d 599; Almour v. Pace, 1951, 90 U.S.App.D.C. 63, 193 F.2d 699, 701–702; Stenerman v. Brownell, 9 Cir., 1953, 204 F.2d 336, 338; Powers v. United States, 7 Cir., 1954, 218 F.2d 828, 829–830.

10. 28 U.S.C.A. § 1346(a) (2). See, Palm-

er v. United States, 1954, 129 Ct.Cl. 322, 121 F.Supp. 643. The fact that a judgment in favor of the plaintiff might, if he lives long, ultimately call for payments in a greater amount than $10,000 does not go to our jurisdiction. It affects only the range of the judgment. What is important is that, *as of today*, the claim is less than the maximum provided in the Tucker Act.

11. Dismuke v. United States, 1936, 297 U.S. 167, 56 S.Ct. 400, 80 L.Ed. 561; Anderson v. United States, 9 Cir., 1953, 205 F.2d 326, 40 A.L.R.2d 639; Palmer v. United States, supra Note 10.

of hazard to which such officer or employee is subjected in the performance of his duties, rather than the general duties of the class of the position held by such officer or employee."

The section is a part of a general retirement statute of federal civil service employees originally enacted in 1920, which sought to provide for compulsory retirement of persons who, by reason of age, were no longer able to render satisfactory service.[12] It achieved this by providing for retirement at a certain age if the employee had served a minimum number of years. In 1947, the Congress amended the section under consideration by providing that any special agent, special agent in charge, inspector, assistant director, assistant to the director, associate director or the director of the Federal Bureau of Investigation *who is at least fifty years of age and who has rendered twenty years of service or more as a special agent or in any other capacity designated in the Federal Bureau of Investigation* may

"on his own application and with the consent of the Attorney General, retire from the service".[13]

The object of this section was to allow, *with the consent of the Attorney General,* men in that service to retire earlier in order that younger men might be induced to enter it.

The 1948 amendment which introduced the change under which this action was instituted extended to other agents engaged *principally in law enforcement* the same privilege of retirement at a lower age and at an increased annuity. The section as it reads thus provides a voluntary retirement conditioned upon the following: (1) That the duties of the employee shall be *primarily* the investigation, apprehension or detention of persons suspected or convicted of offenses against the criminal laws of the United States. Included in this group are any officers or employees engaged in such activities who have been transferred to a supervisory or administrative position. (2) That the employee shall have reached the age of fifty, (3) shall have rendered twenty years of service in the performance of such duties, and (4) shall apply for the pension and (5) his application shall have the *recommendation* of the Head of the Department or Agency in which he is serving, and (6) the *approval* of the Civil Service Commission.

The wording of the section and its history indicate (1) that this was a voluntary retirement scheme dependent upon the application of the employee, (2) that it could be granted only upon fulfillment of all the conditions enumerated and (3) the recommendation of the Head of the Department or Agency in which he served, and the approval of the Civil Service Commission.

In the case before us the Treasury Department, the Agency in which the plaintiff was serving, refused to make the recommendation and the Civil Service Commission refused to approve the retirement because of the absence of such recommendation. These facts are not disputed. However, the plaintiff insists that the refusal of the Treasury Department was not warranted by law and should be set aside by this Court as an arbitrary exercise of discretionary power.

██ We need not concern ourselves with the general circumstances under which courts will or will not interfere with executive or administrative action. The Congress has made the recommendation of the Head of the Department or the Agency and the approval of the Civil Service Commission conditions precedent to the granting of voluntary retirement under these more favorable conditions. In the circumstances, the rule applicable is that stated by the Supreme Court in this manner:

"The United States is not, by the creation of claims against itself, bound to provide a remedy in the

---

12. 41 Stat. Ch. 195, p. 614, 5 U.S.C.A. § 691 et seq.

13. 61 Stat. Ch. 219, p. 307.

courts. It may withhold all remedy or it may provide an administrative remedy and make it exclusive, however mistaken its exercise. See United States v. Babcock, 250 U.S. 328, 39 S.Ct. 464, 63 L.Ed. 1011. *But, in the absence of compelling language, resort to the courts to assert a right which the statute creates will be deemed to be curtailed only so far as authority to decide is given to the administrative officer. If the statutory benefit is to be allowed only in his discretion, the courts will not substitute their discretion for his.*" [14] (Emphasis added.)

■ The principle goes back over a century to an old case in which Mr. Justice Story stated:

"Whenever a statute gives a discretionary power to any person, to be exercised by him, upon his own opinion of certain facts, it is a sound rule of construction, that *the statute constitutes him the sole and exclusive judge of the existence of those facts.*"[15] (Emphasis added.)

■■ In quoting with approval this statement the Supreme Court in 1940, speaking through Mr. Justice Douglas, said:

"It has long been held that where Congress has authorized a public of-

ficer to take some specified legislative action when in his judgment that action is necessary or appropriate to carry out the policy of Congress, the judgment of the officer as to the existence of the facts calling for that action is not subject to review." [16]

Significantly, Mr. Justice Douglas added that for the Judiciary "to probe the reasoning" which underlies the determination "would amount to a clear invasion of the legislative and executive domains." [17]

■ So here the undisputed fact is that the Congress, although making the recommendation of the head of the Agency and the approval of the Civil Service Commission conditions precedent to the granting of these higher benefits, *has not* laid down any rules under which the recommendation of the head of the agency shall be granted.

As to conditions for approval by the Civil Service Commission the Section directs that it *determine* whether the employee or officer is entitled to retirement under the Section. So doing it is urged to give full consideration to the degree of hazard to which the officer or employee "is subjected in the performance of his duties, rather than the general duties of the class of the position held by such officer or employee."

14. Dismuke v. United States, supra, Note 11, 297 U.S. at pages 171–172, 56 S.Ct. at page 403.

15. Martin v. Mott, 1827, 12 Wheat. 19, 31, 6 L.Ed. 537.

16. United States v. George S. Bush & Co., Inc., 1940, 310 U.S. 371, 380, 60 S. Ct. 944, 946, 84 L.Ed. 1259.

17. United States v. George S. Bush & Co., Inc., supra, Note 16, 310 U.S. at page 381, 60 S.Ct. at page 946. And see, Hiatt v. Compagna, 5 Cir., 1949, 178 F.2d 42, 46–47. This principle has no application where the Congress has vested certain rights in individuals, such as the right of Indians occupying tribal lands allocated to them originally by the Congress, to receive individual allotments subject to the approval of the

Secretary of the Interior. In such cases, the failure to approve the allotment when all the other conditions calling for the division of the tribal lands and the vesting of separate parcels by allotment in individual Indians, and, thus, ending the trusteeship of the United States, have been complied with, is considered an arbitrary act. Arenas v. United States, 1944, 322 U.S. 419, 64 S.Ct. 1090, 88 L.Ed. 1363. By contrast, a public retirement fund, although contributory, *does not* create private contractual or vested rights, but "merely declares a policy". Dodge v. Board of Education, 1937, 302 U.S. 74, 79, 58 S.Ct. 98, 100, 82 L.Ed. 57; Anderson v. United States, 9 Cir., 1953, 205 F.2d 326, 328, 40 A.L.R. 2d 639; Rafferty v. United States, 3 Cir., 1954, 210 F.2d 934. And see, Palmer v. United States, supra, Note 10.

There is nothing in the record to show, as will appear further on in the discussion, that the plaintiff *either performed* more hazardous acts than those in his group, *or that he placed any evidence to that effect* before the Commission. It follows that even if the Secretary of the Treasury and the head of the Civil Service Commission, both of whom have their official residence in the District of Columbia, were parties to this action, we could not inquire into the reasons for their action.

## III

### The Validity of the Classification

■ What precedes would dispose of the matter. However, in view of the fact that other persons in the plaintiff's group may be affected by the ruling, we state that a thorough study of the problem justifies the conclusion that the refusal of the Treasury Department and the Civil Service Commission to classify persons attached to the Fraud Unit as being engaged *primarily* in the investigation of persons suspected of offenses against the criminal laws of the United States *is not* so arbitrary a classification as to warrant interference by the Court, even in cases where such review by the Court is permitted.[18]

It is contended that, by regulation, the Treasury Department and the Civil Service Commission have included *special agents* of the Internal Revenue but have not included agents attached to the Fraud Unit. It is argued that *essentially* they do the same work and incur the same risks. As to risks, it should be added that there is no evidence in the record that a revenue agent attached to the Fraud Unit, who may interview persons whose income tax he is investigating, incurs any risk greater than the ordinary internal revenue agent. He does not disclose to the taxpayer that he is investigating a fraud. He is not allowed to carry arms. He does not arrest any persons. Indeed, the plaintiff himself, stated that in his more than thirty years of service only once did he accompany a deputy United States Marshal who had a warrant for the arrest of a woman charged with income tax evasion, and that was merely for the purpose of *identifying her.* The investigation conducted by the members of Fraud Unit precedes the actual determination that a criminal action should be instituted. After criminal prosecution is determined upon, the special agents are in complete charge, although members of the Fraud Unit may be called upon, as the regulations state, to assist the United States Attorney in the presentation of facts to the Grand Jury or even to be witnesses at the trial. It is true that the special agents perform similar acts. But they do other things. And granting that the word "primarily" in the definition of the duties in the section under consideration [19] means "chief" or "principal",[20] an executive determination that special agents *are* engaged primarily in investigation of offenses against the laws of the United States, while persons in the plaintiff's category *are not,* does not violate any of the norms for classification laid down by the courts. Some inequality is inherent in *any* classification. And the question is not so much whether some of the persons excluded perform similar duties but whether, on the whole, the persons included constitute a *separate* and *distinct* group warranting separate treatment.

18. Patsone v. Commonwealth of Penn., 1914, 232 U.S. 138, 144, 34 S.Ct. 281, 58 L.Ed. 539; People of the State of New York ex rel. Bryant v. Zimmerman, 1928, 278 U.S. 63, 73–77, 49 S.Ct. 61, 73 L.Ed. 184; Tigner v. State of Texas, 1940, 310 U.S. 141, 146–147, 60 S.Ct. 879, 84 L.Ed. 1124; Skinner v. State of Oklahoma, 1942, 316 U.S. 535, 540–541, 62 S.Ct. 1110, 86 L.Ed. 1655;

Railway Express Agency, Inc., v. People of State of New York, 1949, 336 U.S. 106, 112–117, 69 S.Ct. 463, 93 L.Ed. 533.

19. 5 U.S.C.A. § 691(d).

20. Agnew v. Board of Governors, 1945, 80 U.S.App.D.C. 377, 153 F.2d 785, 790–791.

 In assaying the validity of a classification, it is well to observe the wise warning of Mr. Justice Oliver Wendell Holmes in a famous case:

"A lack of abstract symmetry does not matter. The question is a practical one, dependent upon experience. *The demand for symmetry ignores the specific difference that experience is supposed to have shown to mark the class.*"[21] (Emphasis added.)

If this be so, when dealing with the police power of the States, under the due process guarantee of the Fourteenth Amendment, the violation of which by the States the federal courts stand ready to stay at any time, there is greater cogency in applying the norm to situations wherein the Congress has outlined a general policy and has delegated to an administrative or executive agency the power of putting it into practice.[22] The problem always is whether there are facts warranting a separate classification. It is a practical one and, as stated by Mr. Justice Holmes in another case, in determining it, the courts have to consider not

"a geometrical equation"

but

"*whether the difference does injustice to the class generally, even though it bear hard in some particular case*".[23]

In the case before us the plaintiff's duties as a member of the Fraud Unit group were defined by the Regulations (GS 12). So were also his duties as technical adviser, tax accountant and auditor. (GS 13) Emphasis is placed on the duties to conduct audits, and to cooperate with special agents when fraud is discovered in the first instance. (GS 12) In the second instance, (GS 13) stress is laid on the performance of auditing and accounting duties pertaining to exceptionally difficult cases under investigation and the like. The primary obligation of investigating frauds is laid upon the Special Agents. The Revenue Agent assigned to the fraud group aids them as he also aids the attorneys in the Regional Office when he is promoted to the position of adviser. In the circumstances, even though the plaintiff's work, in some respects, duplicates that of a special agent, there is sufficient warrant in fact and law in classifying special agents as *being primarily engaged* in investigating and *not so classifying* the plaintiff. So that, granting that the refusal of the Secretary of the Treasury to recommend and of the Civil Service Commission to approve his retirement under the section[24] was based upon this classification, such classification not being arbitrary, it is beyond our power to interfere with its application to the plaintiff.

Judgment will, therefore, be for the defendant that the plaintiff take nothing.

Formal findings and judgment to be prepared by counsel for the Government under Local Rule 7.

21. Patsone v. Commonwealth of Penn., supra [232 U.S. 138, 34 S.Ct. 282], Note 18. See, Railway Express Agency v. People of State of New York, supra, Note 18.

22. Phelps Dodge Corp. v. National Labor Relations Board, 1941, 313 U.S. 177, 187–188, 61 S.Ct. 845, 85 L.Ed. 1271; Federal Trade Commission v. Cement Institute, 1948, 333 U.S. 683, 690–693, 68 S.Ct. 793, 92 L.Ed. 1010; National Labor Relations Board v. Gullett Gin Co., 1951, 340 U.S. 361, 362–364, 71 S.Ct. 337, 95 L.Ed. 337; and see, cases cited in Note 17.

23. Bain Peanut Co. of Texas v. Pinson, 1931, 282 U.S. 499, 501, 51 S.Ct. 228, 229, 75 L.Ed. 482. See, George v. United States, 9 Cir., 1952, 196 F.2d 445, 452.

24. 5 U.S.C.A. § 691(d).