**MUZQUIZ et al.**

v.

**CITY OF SAN ANTONIO et al.**

**Civ. A. No. SA72CA271.**

United States District Court,
W. D. Texas,
San Antonio Division.

July 1, 1974.

Kermitt L. Waters, Las Vegas, Nev., Cecil W. Bain, San Antonio, Tex., for plaintiffs.

Harvey L. Hardy, San Antonio, Tex., for defendant Firemen and Policemen's Pension Fund Bd. of Trustees, and Individual Member Trustees.

Crawford B. Reeder, City Atty., Edgar A. Pfeil, Asst. City Atty., City of San Antonio, San Antonio, Tex., for defendant City of San Antonio.

## OPINION

CLARY, Senior District Judge.

This is a class action brought under 42 U.S.C. §§ 1983, 1985 and 28 U.S.C. § 1343(3) and (4) pursuant to 28 U.S.C. §§ 2201 and 2202 seeking an accounting, restitution, and injunctive and declaratory relief on behalf of former policemen and firemen of the City of San Antonio against the City of San Antonio and the Firemen and Policeman's Pension Fund Board of Trustees. The class represents those who have contributed to the Fire and Police Department Pension Fund and who subsequently left the employ of their respective departments and whose pension monies were not then refunded to them pursuant to Article 6243f, Section 19, Vernon's Texas Civil Statutes [1] which bars such refunds. The plaintiffs seek a declaration of the unconstitutionality of Article 6243f, Section 19 as a violation of Due Process and Equal Protection under the Fifth and Fourteenth Amendments, and the Supremacy Clause, Article VI, of the Constitution as well as constituting a Bill of Attainder and Inverse Condemnation. This matter is before the Court on a Rule 56 Motion by Defendants for Summary Judgment and a Cross-Motion by Plaintiffs for Partial Summary Judgment as to liability. A Hearing has been held and a Case Stated submitted by the parties.

## I. JURISDICTION

Although the Defendants have conceded Jurisdiction [2] for the purposes of their Motion for Summary Judgment, the Court nevertheless believes the clear command of City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973) to compel us, *sua sponte*, to dismiss the City of San Antonio as a party. As the Court said in *Kenosha*, " 'It is the duty of this Court to see to it that the jurisdiction of the [district court], which is defined and limited by statute, is not exceeded.' " at 511, 93 S.Ct. at 2225 citing Louisville and Nashville R. Co. v. Mottley, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908). That component of jurisdiction which concerns us here goes to the question of *equitable jurisdiction* against municipal corporations under § 1983 as a possible exception to the holding of Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) with its bar to claims for *damages* against municipal corporations in a § 1983 action.

The Court in *Kenosha* held that:

"We find nothing in the legislative history discussed in *Monroe*, or in the language actually used by Congress, to suggest that the generic word 'person' in § 1983 was intended to have a bifurcated application to *municipal corporations* depending on the nature of the relief sought against them. Since, as the Court held in *Monroe*, 'Con-

---

1. ". . . . [N]o member of either of said Departments or of said Fund shall ever be entitled to any refund from said Fund on account of the money deducted from their pay for the benefit of the Pension Fund which money is itself declared to be public money, and the property of said Fund for the bene-

fit of the members qualifying for benefits and their beneficiaries." Section 19 amended by Acts 1971, 62nd Leg., p. 42, ch. 19 § 7, eff. Aug. 30, 1971.

2. Defendant's Motion for Summary Judgment at Page 5.

gress did not undertake to bring municipal corporations within the ambit of' § 1983, [365 U.S.,] [id.] at 187 [81 S.Ct. at 484,] they are outside of its ambit for purposes of equitable relief as well as for damages." at 513 of 412 U.S., at 2226 of 93 S.Ct. (emphasis added).

In this regard, we have thus reconsidered our decision as to jurisdiction at the hearing which was based on Judge Seals' opinion in Walker v. City of Houston, 341 F.Supp. 1124 (S.D.Tex. (1972) [3] rendered prior to Kenosha. What has been said as to § 1983 actions and municipal corporations would apply as well to actions under 42 U.S.C. § 1985, Monroe v. Pape, supra; Dodd v. Spokane County, 393 F.2d 330 (9th Cir. 1969); Mack v. Lewis, 298 F.Supp. 1351 (D.C.Ga.1969), and would hence also bar the instant claim under § 1985 as to the City of San Antonio.

Nevertheless, jurisdiction still obtains under §§ 1983 and 1985 as to the Pension Fund and its individual members, as it expressly is not a municipal entity under Texas law, as has been, in fact, acknowledged by the defendants in their Trial Brief at Page 6.[4] Moreover, the relief sought in this case is predominantly equitable in nature [5] and would thus seem to fall within the continuing sub silentio exceptions both to Monroe and its progeny Kenosha. See, e.g., Cleveland Board of Education v. LeFleur (1974), 414 U.S. 632, 94 S.Ct. 791, 39 L. Ed.2d 52; Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); see also Harkless v. Sweeney Independent School District, 427 F.2d 319 (5th Cir. 1970), cert. den., 400 U. S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439; Antieu, Federal Civil Rights Acts (1971) § 37, supp. at 17, n. 20.

## II. CLASS ACTION

For the purposes of Rule 23, we shall denominate the class in question as constituting all those living former policemen and firemen of the San Antonio Police and Fire Departments who left the employ of the police and fire departments respectively prior to becoming eligible for retirement benefits [6] but who pursuant to the Article 6243f, Section 19

---

3. *Walker* represented an earlier posture of this case wherein Judge Seals held that he had jurisdiction under both 28 U.S.C. §§ 1331 and 1343 of the subject matter but that venue was improperly laid as to, *inter alia*, the instant plaintiffs. The case was accordingly transferred to this District as to the instant parties. *Id.* at 1133–1134.

4. *See*, their citation to that effect from another case arising from the operation of the instant Pension Fund, Bolen v. Board of Firemen, Policemen, and Fire Alarm Operators' Trustees of San Antonio, Texas., Tex. Civ.App., 308 S.W.2d 904 at 905:

 "The Board is not the State, nor is it a county, a city, a town or any other political corporation or subdivision of the State. The Board is simply a group of statutory trustees charged with management of the Pension Funds of the Firemen, Policemen and Fire Alarm Operators of the City of San Antonio." *Id.*

 The defendants, on the other hand, have nowhere argued the lack of any state action, and for the purposes of § 1983 jurisdiction, we find that the above-named statute, Article 6243f, creates sufficient state nexus, *see*, *e. g.* Sections 1, 4–6, 19 ("public money"), 21 (City of San Antonio must make up defi-

cits) along with its status as a legislatively-created entity, so as to confer jurisdiction upon the Court.

 However, the plaintiffs have also alleged jurisdiction under 28 U.S.C. § 1331 and the defendants have contested the jurisdictional amount, Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); nevertheless, we need not reach this question (*see also* III) as we find proper jurisdiction under § 1983 and 28 U.S.C. § 1343(3) and (4), *supra.*

5. The Fifth Circuit in Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122 (1969) has held, for example, that "back pay is not in the nature of a claim for damages, but rather is an integral part of the statutory equitable remedy . . ." at 1125. *See, generally*, 27 Am.Jur.2d Equity, §§ 10, 14, 30, 109–112; 30 C.J.S. Equity §§ 39, 40, 41 (Accounting, Declaratory and Injunctive Relief), § 652 (Restitution); De-Funiak, Handbook of Modern Equity (2nd Ed.) Sec. 103 (Accounting).

6. It is noteworthy that the plaintiffs were eligible while members of the Police and Fire Departments for all other benefits therein available. For example, the plain-

contributed monies which were not returned to them upon their departure. The plaintiffs have also sought as an article of relief in their Fourth Amended Class Action (Docket Entry No. 142) to act on behalf of the "widows and heirs or legal representatives of all deceased former members of the San Antonio Police and Fire Departments who were separated from the police or fire department prior to becoming eligible for retirement" and who while living were also denied a refund of their contributed pension monies. Since there are no representatives of said class among the named plaintiffs, the Court finds that the requirements of Rule 23 that "one or more members of a class may sue" are clearly not met, Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962), 7 Wright and Miller, Federal Practice and Procedure § 1761; nor, correspondingly, do we believe that the requirement of 23(a)(4) can be met that "the representative parties will fairly and adequately protect the interests of the class" since the named parties are not "representative" of the widows and children at all. Cf. Huff v. Cass, 485 F.2d 710 at 714 (5th Cir. 1973) and *see* Wright and Miller, *supra* at § 1798.

The defendants have nowhere contested the existence or propriety of the class of former policemen and firemen and as to them we hold that all the prerequisites to a class action under Rule 23(a) have been met: numerosity; common questions of law and fact; representative claims and defenses; and parties who will adequately represent the interest of the class.[7] Moreover, owing to the equitable character of the relief sought, *supra*, with its emphasis on declaratory and injunctive relief, Advisory Committee's Note to Rule 23, 39 F.R.D. 98, 102,[8] of a civil rights nature,[9] 39 F.R.D. *id.*,[10] 7A Wright and Miller *supra*, § 1775 at 24, § 1776 et seq., we believe the instant litigation to be most appropriately characterized under 23(b)(2).[11] There can be little question

---

tiffs and their dependents were covered against death and disability Article 6243f, *supra*, Sections 10–13, which benefits were also lost upon resignation.

7. *See*, in this regard, *Walker, supra* at 1131 of 341 F.Supp.:
"All four of the necessary conditions of subdivision (a) of Rule 23 are met. The number of all prior members of each of the various funds is so great that it would be impracticable to attempt to join all of them. The constitutional issues raised with respect to each fund are common to all prior members of each fund. The prior members of each fund represent a distinct class and at least one member of each such class is a named party-plaintiff. The claims of the named party-plaintiffs are typical of the claims of their respective classes, and it appears that these plaintiffs, as representative parties, will fairly and adequately protect the interests of their class."

8. "Subdivision (b)(2). This subdivision is intended to reach situations where a party has taken action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate. Declaratory relief 'corresponds' to injunctive relief when as a practical matter it affords injunctive relief or serves as a basis for later injunctive relief. The subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages. Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class."

9. *See*, Johnson v. Georgia Highway Express, *supra* and Robinson v. Lorillard Corp., 444 F.2d 791 (4th Cir. 1971), cert. dism'd., 404 U.S. 1006, 1007, 92 S.Ct. 573, 30 L.Ed.2d 655; ". . . the award of back pay, as one element of the equitable remedy, conflicts in no way with the limitations of Rule 23(b)(2) . . . [citing Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 720 (7th Cir.) (1969)]" *per* Sobeloff, C. J.

10. "Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class . . ."

11. Rule 23(b): "(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . ." *Id.*

that the instant Pension Fund has "acted or refused to act on grounds generally applicable to the class" where a "common regulatory scheme" is involved, Almenares v. Wyman, 334 F.Supp. 512 (S. D.N.Y.1971), modified, 453 F.2d 1075 (2nd Cir.), cert. den., 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815; Ware v. Estes, 328 F.Supp. 657, aff'd per curiam, 458 F.2d 1360 (5th Cir.), cert. den., 409 U.S. 1027, 93 S.Ct. 463, 34 L.Ed.2d 321, such as the instant statute, and where the relief sought is both of a "final" injunctive nature, 7A Wright and Miller, *supra* § 1775 at 21, and of a "corresponding" declaratory nature which would settle the question of the legality of the above statutes as to the class.

Accordingly, as a Rule 23(b)(2) class action, the instant case does not fall within the ambit of Eisen v. Carlisle and Jacquelin et al., —— U.S. ——, 94 S. Ct. 2140, 2152, 40 L.Ed.2d 732, with its notice requirement for 23(b)(3) actions.[12]

## III. STATEMENT OF THE CASE

■ The nub of this case is the constitutionality of Article 6243f, Section 19 and the factual issues if any are purely ancillary to that determination and will be discussed *infra* where appropriate. In this regard, we concur with the opinion of our brothers of the Judicial Panel on Multidistrict Litigation who found "that the actions in this litigation involved predominantly, if not entirely, questions of law . . ." [13]

Moreover, while the defendants have brought the instant motion under Rule 56(b), the plaintiffs have themselves agreed as to the lack of dispute of any material fact and have submitted their own Cross Motion for Partial Summary Judgment as to Liability (Docket Entry No. 153) wherein they state that "there is no disputed material fact in issue." [14] Nevertheless, the Court must make its own inquiry in this regard. Pioneer National Title Insurance Co. v. American Casualty Co., 459 F.2d 963 (5th Cir. 1972); 6 Moore's Federal Practice, ¶ 56.13 et seq.; 7A Wright and Miller, *supra* at § 2720 et seq.

Having made our inquiry we have determined only one possible area of dispute of a material nature,[15] to wit, the underlying considerations, *e. g.*, dangerousness and personal safety, which might justify the differing classifications of police and firemen as to the return of pension fund monies in differently-sized Texas cities,[16] and in that aspect, we further determine that there is another rule of law that governs entirely so that the question need not be reached.

■■ As to this question, we believe that we are faced with neither the abrogation of a fundamental constitutional right, San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); Baker v. Carr, 369 U.S. 186, 229–237, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), which would warrant the application of the Equal Protection "compelling state interest" test, nor for the reasons discussed below

---

12. In *Eisen*, the Supreme Court noted at fn. 14: "We are concerned here only with the notice requirements of subdivision (c) —— U.S. at ——, 94 S.Ct. 2140 (2), which are applicable to class actions maintained under subdivision (b)(3). By its terms subdivision (c)(2) is inapplicable to class actions for injunctive or declaratory relief maintained under subdivision (b)(2)."

13. Docket No. 131, dated June 13, 1971, Slip Opinion at 2.

14. At 1.

15. *See also*, n. 4 at 952. Additionally, there appear to be other disputes of a non-materi-

al nature that are not relevant to the instant disposition of the case. For example, the parties differ in the area—and import—of the named plaintiffs' knowledge upon joining the force that they would not be refunded their pension monies upon departure prior to eligibility for pensions. This is an area of no bearing as to the constitutional issues upon which this case turns.

16. The plaintiffs have alleged that San Antonio along with Dallas, Houston, and El Paso are the only cities in Texas that refuse to refund pension fund monies to police and firemen.

and at V, *infra,* the application of the "less strict scrutiny" test of "rationality" which, would, in turn, elevate this area of dispute to a level of materiality necessary to the resolution of the case. We do not reach this question because we are convinced that prior Supreme Court holdings clearly mandate that "the Equal Protection Clause relates to equality between persons as such, rather than between areas and that territorial uniformity is not a constitutional prerequisite," McGowan v. Maryland, 366 U.S. 420, 427, 81 S.Ct. 1101, 1106, 6 L.Ed.2d 393, and that "a State, of course, has a wide discretion in deciding whether laws shall operate statewide or shall operate only in certain counties, the legislature 'having in mind the needs and desires of each' [citing to Salsburg v. Maryland, 346 U.S. 545, 74 S.Ct. 280, 98 L.Ed. 281 (1953)]". Griffin v. School Board, 377 U.S. 218, 231, 84 S.Ct. 1226, 1233, 12 L. Ed.2d 256 (1963).

The Court added "We find no invidious discrimination here [again citing to Salsburg v. Maryland, *supra,* 346 U.S. at 550–551 (1953)]", *id.* This holding was interestingly enough, cited to in another case also involving disparate governmental treatment of differing geographical entities, San Antonio Independent School District v. Rodriguez, *supra,* 411 U.S. at 54, 93 S.Ct. 1278 (1973). The Court in *Rodriguez* affirmed its belief in the continuing vitality of the *McGowan* holding and asserted that it "has never found in the Equal Protection Clause any *per se* rule of 'territorial uniformity' [citing to *McGowan, supra,* Griffin v. School Board, *supra,* (1963); Salsburg v. Maryland, *supra* and Board of Education of Muskogee v. Oklahoma, 409 F.2d 665, 668 (10th Cir. 1969)]."

■ Accordingly, since we hold *infra* as a matter of law, that plaintiffs have demonstrated no deprivation of their Right to Travel, the defendants do not have to demonstrate any "compelling state interest" for the classification of Texas cities by size as to the refundability of Police and Firemen's Pension plans.

■ Secondly, the rationale of the differing pension fund classifications of the category of inter-San Antonio municipal employees—between policemen and firemen on one hand and all other city employees on the other—is itself within the ambit of the less strict scrutiny test of rationality and legitimate state purpose, for we consider it clear that such a classification creates no "suspect" class *infra,* on the basis of race or alienage, for example. And as to intra-San Antonio City employees, there is *no factual dispute.* The plaintiffs have not contested defendants' assertions of the "rationality" of such a classification as based on the assumption that within the governmental family of the City of San Antonio, policemen and firemen do, indeed, perform more hazardous work than other municipal employees and therefore deserve greater benefits; that those greater benefits depend upon greater income—and lesser expenses—to the instant pension fund and that, accordingly, the no-refund provision is a rational and logical component of the goal of reducing expenses. *See, infra* at 959.

## IV. DUE PROCESS

■ We now turn to what is perhaps plaintiffs' strongest constitutional claim—that Article 6243f, *supra* violates Due Process of Law as a deprivation of property without compensation therefor. If this were a case of first impression, this Court might possibly have arrived at a different result; however, the plaintiffs are asking us to reverse 85 years of unbroken Constitutional law at the Federal level beginning at the Supreme Court with the landmark case of Pennie v. Reis, 132 U.S. 464, 10 S.Ct. 149, 33 L.Ed. 426 (1889)[17] and culminating in Flemming v.

---

17. Pennie v. Reis is itself antedated by even more venerable cases whose roots go back to the founding of the Republic. *See,* Walton v. Cotton, 60 U.S. 355, 19 How. 355, 15 L.

Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1959) [18] and reiterated in decisions of the 1st,[19] 3rd,[20] 5th,[21] 6th,[22] 9th,[23] and District of Columbia [24] Circuits as well as in the District Courts of the country [25] and in the majority of state courts that have considered this matter.[26]

Ed. 658 (1857) holding that Revolutionary War pensions were in the nature of a "bounty"; *see also*, United States ex rel. Burnett v. Teller, 107 U.S. 64, 2 S.Ct. 39, 27 L.Ed. 352 (1882) (Mexican War Pensions); Frisbie v. United States, 157 U.S. 160, 166, 15 S.Ct. 586, 39 L.Ed. 657 (1895) (Civil War Pensions). While historically noteworthy, we recognize, of course, that the claims involved are not entirely apposite in that there is no question involved of the public or private status of "contributions" from salary.

18. Intervening decisions to like effect are Lynch v. United States, 292 U.S. 571, 54 S. Ct. 840, 842, 78 L.Ed. 1434 (1934) (dictum) ("Pensions . . . are gratuities . . . and the grant of them creates 'no vested right. The benefits conferred . . . may be redistributed or withdrawn at any time in the discretion of Congress. *Id.* at 577 and Dodge v. Board of Education, 302 U.S. 74, 58 S.Ct. 98, 100, 82 L.Ed. 57 (1939) (State Pension statute) (". . . the payments are gratuities . . . [and] the grant of them creates no vested right." Citing to *Pennie* and *Lynch, supra*.)

19. MacLeod v. Fernandez, 101 F.2d 20, 22–25 (1st Cir. 1938), cert. den. sub nom., Toste v. MacLeod, 308 U.S. 561, 60 S.Ct. 72, 84 L. Ed. 471 (1939) (Compulsory contributions create no vested rights and the monies are in the nature of public funds).

20. Rafferty v. United States, 210 F.2d 934, 936 (3rd Cir. 1954) (No denial of Fifth Amendment Due Process and no creation of vested rights in withholding of pension fund monies in case of compulsory contributions citing to *Pennie* as "still the leading case on the general subject" at 936).

21. Morgan v. United States, 115 F.2d 426, 427 (5th Cir. 1941) (World War I Death benefits) ("bounty" and "indistinguishable from a pension").

22. In re Goodwin, 57 F.2d 31, 32 (6th Cir. 1932) (Firemen's pension—voluntary contributions supplemented by tax monies) (". . . public fund in which the contributors have no vested rights which cannot be taken away by subsequent legislation." citing to *Pennie*).

23. Anderson v. United States, 205 F.2d 326, 328–329 (9th Cir. 1953) (Civil Service Retirement Fund) (". . . sums 'deducted' are never in fact paid . . . but are retained by the government as general public funds in which the employees can have no right [citation to *Pennie*, Griffith v. Rudolph, *infra*, MacLeod v. Fernandez, *supra*; Dodge v. Board, *supra*; In re Goodwin, *supra*]").

24. Stouper v. Jones, 109 U.S.App.D.C. 106, 284 F.2d 240, 242–243 (1960) (Civil Service Retirement Fund) (No vested right citing to Flemming v. Nestor, *supra* and its Due Process holding); Griffith v. Rudolph, 54 App.D.C. 350, 298 F. 672 (1924) (Retirement insurance fund) (No vested right citing to *Pennie*).

25. Robbins v. Police Pension Fund, 321 F. Supp. 93, 97 (S.D.N.Y.1970) (Police Pension Fund) (No vested right to a pension and no 14th Amendment Due Process violation); Price v. Folsom, 168 F.Supp. 392, 398–399 (D.C.N.J.1959) (Pension is gratuity and denial constitutes no deprivation of Due Process); Steinberg v. United States, 143 Ct.Cl. 1, 163 F.Supp. 590 (Annuity) (gratuity citing to *Dodge, supra*); Allen v. United States, 148 F.Supp. 817, 818 (S.D. Ill.1957) (Federal pension) (gratuity with no vested rights); Gibney v. United States, 146 F.Supp. 135, 140 (S.D.Cal.) (1956) (Compulsory public retirement fund) (no vested rights); In re Hoag, 227 F. 478, 479–480 (S.D.N.Y.1915) (Augustus Hand, J.) (Municipal pension fund) (no vested right).

26. *See, e. g., Illinois.* Blough et al. v. Ekstrom et al., 14 Ill.App.2d 153, 144 N.E.2d 436, 1957; *New Jersey.* Feher v. Board of Trustees, Public Employees Retirement System, 68 N.J.Super. 391, 172 A.2d 445, 1961; *West Virginia.* State ex rel. Fox v. Board of Trustees of the Policemen's Pension or Relief Fund of the City of Bluefield et al., 148 W.Va. 369, 135 S.E.2d 262, Supreme Court of Appeals of West Va. 1964; *Idaho.* Hanson et al. v. City of Idaho Falls, 92 Idaho 512, 446 P.2d 634, 1968; *New Jersey.* Bader v. Crone, 116 N.J. Law 329, 184 A. 346, Sup.Ct. of N.J.; as well as other cases in Colorado, Iowa, Kansas, Massachusetts, Michigan, Missouri and Nebraska. Jurisdiction holding otherwise can be found in California, Georgia, Ohio, Oklahoma, Pennsylvania, Tennessee, Washington, *See,* generally, 52 A.L.R.2d 437 and Supp.

Texas cases holding the lack of vested rights and the status of fund as public monies are:

City of Dallas v. Trammel, 129 Tex. 150, 101 S.W.2d 1009, 112 A.L.R. 997; Devon v.

*Pennie v. Reis* also involved putative contributions from salary to a police pension fund. In *Pennie,* the plaintiff sued for the benefits from the fund and similarly raised a Due Process argument. The plaintiffs here have attempted to distinguish *Pennie* from the instant case on the basis that they are only seeking the return—not the benefits—of what they assert to be their paid-in pension monies. Nevertheless, such a claim is a distinction without a difference and must fail, for the rationale of *Pennie* and its clear holding is that such monies are inextricably public monies [27] whose disposition is wholly at the discretion of the State and which forever retain that character:

" . . . in point of fact, no money was contributed by the police officer out of his salary . . . [such monies] the State, retained in its possession for the creation of this very fund . . . the State impaired no absolute right of property in the police officer . . . The fund . . . was subject to change or revocation at any time, at the will of the legislature. . . . Until the particular event should happen upon which the money, or a part of it, was to be paid, there was *no vested right* in the officer to such payment. His interest in the fund was, until then a mere expectancy, created by the law, and liable to be revoked or destroyed by the same authority . . . Such being the nature of the intestate's interest in the fund . . . *there was no right of property in him* of

which he or his representative has been deprived." *Id.,* 132 U.S. at 470–472, 10 S.Ct. at 151, 33 L.Ed. at 429–430 (emphasis added).

Given the acceptance of that rationale, then it must follow in the instant case that the monies involved were never the property of the plaintiffs in the first place; and, it must also follow, the plaintiffs cannot properly have returned or restored to them that which they did not own in the first place. Consequently, the plaintiffs cannot complain of a deprivation of property without compensation or due process of law, as the money was never "private" at any time.[28]

In *Flemming v. Nestor, supra,* the Supreme Court was faced with a claim that the denial of Social Security benefits was a Constitutional violation and held that not "every defeasance of 'accrued' interests [is] violative of the Due Process Clause of the Fifth Amendment." *Id.* at 611 of 363 U.S., at 1373 of 80 S. Ct., *Price v. Folsom, supra,* also involved a claim to Social Security benefits and we believe the District Court's words are particularly applicable to the instant case as well:

"It is a general rule that pension funds and payments made therefrom are a gratuitous allowance by the particular governmental body creating and authorizing them. As a consequence, a beneficiary of such a pension fund does not acquire a vested right to any payments therefrom except those which have actually become due and owing the beneficiary. This

---

City of San Antonio (Firemen and Policemen's Pension Board of Trustees) 443 S.W. 2d 598 (Tex.Civ.App.1969); Byrd v. City of Dallas, 118 Tex. 28, 6 S.W.2d 738 (1928); City of Dallas v. Hoskins, 193 S.W.2d 533, ref. n. r. e. (Tex.Civ.App.1946); Reagan v. Board, 307 S.W.2d 958 (Tex.Civ.App.1957) no writ hist.; Gaines v. Shank, 312 S.W.2d 268, ref. n. r. e. (Tex.Civ.App.1958); Jud v. City of San Antonio, 313 S.W.2d 903, writ refused (Tex.Civ.App.1958); Gould v. City of El Paso, 440 S.W.2d 696, ref. n. r. e. (Tex.Civ.App.1969); City of Orange v. Chance, 325 S.W.2d 838, no writ hist. (Tex. Civ.App.1959).

*See also* 60 Am.Jur.2d, "Pensions and Retirement Funds" § 49; 62 C.J.S. Municipal Corporations § 588, at 1194.

27. The public fund status of the instant fund is expressly recognized by statute: *See* Section 19 of Article 6243f: " . . . which [pension fund] money is in itself declared to be public money."

28. Therefore, owing to the public character of the monies, we intimate no opinion as to the vesting procedures of non-public pension funds.

is so whether the payments to the fund are voluntary or compulsory [citing to MacLeod v. Fernandez, *supra*]" *Id.* at 398 of 168 F.Supp.

We also consider it significant in this regard that the Internal Revenue Service has declared that the pension payroll deductions are not taxable for the reason that, "technically, the contributions are not a deductible item because they should not be shown as income in the first place." [29]

■ We therefore have no other alternative than to dismiss plaintiffs' Due Process claim on the basis of the unanimous authority of Federal courts over nearly the last 100 years. In this we re-affirm and renew the validity of the opinion of the Third Circuit as expressed in Rafferty v. United States, *supra*, 210 F.2d at 936, speaking through Goodrich, Hastie and McLaughlin, Circuit Judges, that "the law is clear and that . . . Pennie v. Reis, [citation] is still the leading case on the general subject." The rule is harsh, perhaps, but we feel constrained in this case to apply the law as it is given to us, *stare decisis*, for it has heretofore admitted of no exceptions and no modifications, and plaintiffs have shown us no examples thereof or compelling reasons that would overcome "one of the first principles of constitutional adjudication —the basic presumption of constitutional validity." *Rodriguez, supra* 411 U.S. at 55, 93 S.Ct. at 1311 (concurring opinion of Stewart, J.) ; McGowan v. Maryland, *supra,* 366 U.S. at 425, 81 S.Ct. 1101. It must also follow that plaintiffs' claims of a violation of their rights to procedural Due Process by the absence of notice and hearing must also fail for the same reasons—there can be no need for such a requirement if the property involved is by statute, *supra,* and law, public, not private, property; cf. Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ; Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L. Ed.2d 349 (1969); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).[30] And finally, owing to the public character of the monies, the plaintiffs' claim of Inverse Condemnation must also be dismissed.

## V. EQUAL PROTECTION

### A. *Rationality of Classification*

Plaintiffs have propounded an aggregation of Equal Protection claims which, individually and collectively, are almost entirely insubstantial. First, as we have seen *supra,* the plaintiffs have asserted that the present statutory classification of San Antonio police and firemen has created in some way a constitutionally "suspect class." Such a contention is absurd, for the only classifications that the Supreme Court has denominated "suspect" pertain to generally immutable characteristics present at birth, such as race, McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); national ancestry, Korematsu v. United States, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944); alienage, Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) ; and, perhaps, illegitimacy, Weber v. Aetna Casualty and Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972) and sex, Frontiero v. Richardson, 411 U.S. 677, 92 S.Ct. 1764, 36 L.Ed.2d 583 (1973). *See also* Nowak, "Realigning the Standards of Review under the Equal Protection Guarantee" 62 Georgetown L.J. 1071, 1072–1082; "The Supreme Court—Forward," 86 Harvard L. Rev. 1, 10–20 (1972); "Developments in the Law-Equal Protection," 82 Harvard L.Rev. 1065, 1124–1127 (1969).

---

29. Letter of the Internal Revenue Service dated April 21, 1958 addressed to A. G. Campa, Secretary, Firemen, Policemen and Fire Alarm Operators Pension Fund of San Antonio and attached to the Case Stated as Exhibit C.

30. Nor, do we believe, that the case falls within the category of the deprivation without hearing of an entitlement or benefit necessary to sustain life. Goldberg v. Kelly, 397 U.S. 254, 264, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

Plaintiffs have also urged that the classificatory distinctions between (a) San Antonio Police and Firemen and all other city employees, and (b) between San Antonio Police and Firemen (as well as Police and Firemen in Houston, Dallas and El Paso) and the police and firemen in all other Texas cities and municipalities works a deprivation of Equal Protection. As to the latter, we have noted, *supra,* that the States have the inherent right to make such distinctions based on differing geographical areas absent the infringement of a fundamental right—which is not asserted in this aspect of the case (see discussion of the right to travel *infra*). As to the former, the plaintiffs have, in the Court's opinion, impliedly conceded the defendants' claims [31] that San Antonio police and firemen do, indeed, possess more hazardous jobs for which they are commensurately rewarded, *inter alia,* by more liberal pension fund benefits (as well as the nonpayment of income taxes, *supra,* on their pension monies in distinction to other city employees) such as higher payments and more extensive disability coverage and that, therefore, "[the] fund requires greater income if the higher pensions and more liberal coverages are to be met." [32] The defendants do not dispute the facts here nor that this in itself bears a rational relationship to what the defendants claim is a valid state objective,[33] Weber v. Aetna Live Insurance Co., *supra,* 406 U.S. at 172, 92 S.Ct. 1400; Turner v. Fouche, 396 U.S. 346, 362, 90 S.Ct. 532, 24 L.Ed.2d 567 (1969), but urge instead, that there is some kind of *per se* constitutional prohibition against creating a "distinctive class"—which is wholly er-

roneous—and in doing so acknowledge, by implication, that the instant funding structure does work to protect the fiscal integrity of the fund: "And, if it is true that the pension of the firemen and policemen in San Antonio is 'very substantially greater,' it is nevertheless an insufficient reason for creating a 'distinctive class' . . . Plaintiffs conclude that the protection of the fiscal affairs will not provide a sufficient justification nor will it raise a compelling state interest." Plaintiffs' Reply to Defendants' Answer to Plaintiffs' Cross-Motion for Summary Judgment (Docket Entry No. 159 filed February 28, 1974) at 4 and 5. What, apparently, the plaintiffs have in mind is the line of cases holding that where a fundamental Constitutional right is infringed upon (which is not the case here), cf. Dandridge v. Williams, 397 U.S. 471, 90 S. Ct. 1153, 25 L.Ed.2d 491 (1970), the State may not raise the protection of its fiscal affairs as a justification thereof.

Clearly, the purpose of the act is to protect those police and firemen who presently and prospectively qualify for benefits and those whose families presently and prospectively are entitled to benefits; therefore, it is patent that the fund must protect itself from a "drainage" of monies away from that purpose to those not within its ambit of coverage —specifically to *former* members who have not qualified for its benefits either of pension or disability nature and who voluntarily chose to remove themselves by resignation from the protection of the statute.

 The distinctions between city employees here then not only have some "relevance" to the purpose of the classi-

---

31. Defendants' Answer to Plaintiffs' Cross Motion for Partial Summary Judgment (Docket Entry No. 156) at 4.

32. *Id.*

33. Nor do the plaintiffs dispute other related goals of pension funds. *See, e. g.,* Plaintiffs' Cross Motion for Partial Summary Judgment at 18:
"While not clearly enunciated in the statutes, there are valid state objectives in creating

pension funds. For example, such benefits may act as an inducement to prospective applicants for employment. Such benefits are accepted methods of providing for old-age benefits which the state may otherwise be compelled to provide; and such benefits do compensate employees for loyalty and longevity."

fication, Rinaldi v. Yeager, 384 U.S. 305, 309, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966); Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989; Note, "Legislative Purpose, Rationality, and Equal Protection," 82 Yale L.J. 123 et seq., (1972); 16 Am.Jur.2d Constitutional Law § 494 et seq., but they the very *raison d'etre* of the classification—and we consider this a particularly apt case for the application of the rule of judicial deference to legislative classifications, Dandridge v. Williams, *supra*, 397 U.S. at 485, 90 S.Ct. 1153, especially when they are of a peculiarly local nature. Carmichael v. Southern Coal and Coke Co., 301 U.S. 495, 510, 57 S.Ct. 868, 81 L.Ed. 1245 (1936); 82 Harvard L.Rev. *supra* at 1128:

> "Judicial deference to the legislature in instances of economic regulation is sometimes explained by the argument that the rationality of a classification may depend upon 'local conditions' about which a local legislative or administrative body would be better informed than a court. Consequently, lacking the capacity to inform itself fully about the peculiarities of a particular local situation, a court should hesitate to dub the legislative classification irriational."

### B. *Right to Travel*

The plaintiffs argue, in essence, that since a policeman or fireman must remain on the police or fire force, respectively, for twenty (20) years in order to obtain pension benefits (however, there is no durational requirement as to other benefits for sickness, death, or disability) and since he obtains no refund of what they allege to be his paid-in monies, these requirements therefore infringe upon his constitutionally guaranteed right of interstate travel. We believe that plaintiffs' argument here is

entirely without merit, and that they have travelled themselves far beyond the outer limits of any Right to Travel theory that has been recognized by any court in this land. We further believe that they have fundamentally misapprehended the Supreme Court's rulings in such cases as Memorial Hospital v. Maricopa County, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974)[34] and Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) which addressed themselves to the validity of *durational residency* requirements; the issue in this case is the *durational* requirement alone—there is no mention in statute, in practice or in the plaintiffs' pleadings that the grant of a pension is conditioned upon residency. The focus of the law is on the departure from the job—not from the geographic entity of the City of San Antonio. Presumably the lack of refund applies whether one goes down the street or to Tahiti.

■ We hold therefore, that the plaintiffs' right of interstate travel is not in any way "invidiously" infringed upon by the operation of the statute so as to "trigger" the application of the compelling state interest test. *Memorial Hospital, supra*, 415 U.S. at 254–270, 94 S.Ct. 1076.

### VI. BILL OF ATTAINDER

■ We find Flemming v. Nestor controlling as to this issue. In the above case, the plaintiff, Ephraim Nestor a former resident of Bulgaria had been deported from the United States for membership in the Communist Party and under the applicable law, 42 U.S.C. § 402(n), was denied his Social Security benefits. He sued alleging the unconstitutionality of the said law arguing, *inter alia*, that it constituted a Bill of Attainder. The Court upheld the law's constitutionality and, in doing so, laid down

---

34. The Supreme Court itself is still struggling with, in Justice Marshall's words *Memorial Hospital, supra* at 259, 94 S.Ct. at 1082 "the ultimate parameters of the Shapiro penalty analysis" in terms of such issues of *durational residency* as "the validity of *waiting—period or residence requirements* determining eligibility [*inter alia*] to obtain a license to practice a profession, to hunt or fish, and so forth." Fn. 13, *Id.* citing from Shapiro v. Thompson, 394 U.S. 618, 638 at n. 21, 89 S.Ct. 1322, 1333, 22 L.Ed.2d 600.

the applicable framework for what constitutes a Bill of Attainder which we shall cite for its pertinency to this case:

> "*Essential to the success of each of these contentions is the validity of characterizing as 'punishment' in the constitutional sense the termination of benefits under § 202(n)* . . .
> Here the sanction is the mere denial of a noncontractual governmental benefit. No affirmative disability or restraint is imposed . . . " *Id.* at 613–617 of 363 U.S., 80 S.Ct. at 1374–1376 (emphasis added).

The Court went on to add that the plaintiff had to prove a "punitive design" by "only the clearest proof [which would] . . . establish the unconstitutionality of a statute." at 617, 80 S. Ct. at 1376. Owing to the presumption of constitutionality with which a statute is clothed, such proof would be neutralized or negated if there were other rationally cognizable grounds which the legislature could have had in mind as the rationale of the statute. *Id.* at 616–621. We hold for the reasons set forth, *supra,* that there are demonstrable and very legitimate state purposes, Trop v. Dulles, 356 U.S. 86, 96, 78 S.Ct. 590, 2 L.Ed.2d 630 (1957), that warrant the no-refund provision of the instant pension fund; and that, moreover, we do not think the no-refund provision, standing alone, was meant to be punitive in the first place. Its only goal as far as we can see is to save money—not to punish anybody.

## VII. SUPREMACY CLAUSE

 The plaintiffs allege that the operation of the instant statute as it was then applied to class plaintiffs is in conflict with the Social Security laws and is therefore in violation of the Supremacy Clause, Article VI of the United States Constitution. The plaintiffs allege that they were under a mandatory

---

35. Points and Authorities in Opposition to Defendants' Motion for Summary Judgment at 3.

36. In view of the granting of judgment in favor of the defendants it becomes unnecessary

Social Security exemption while employed, 42 U.S.C. § 418, and that the "statutory provisions of 'no refund' violate the intent and provisions of exemption under the Social Security Act." [35] We simply see no conflict. The then exemption (Social Security coverage is now optional as to police and firemen, 42 U. S.C. *supra* at (p)(1) (pocket part) as amended Oct. 30, 1972) was decreed by Congress and we simply fail to see how the implementation of the will of Congress conflicts with the will of Congress.

## VIII. CONCLUSION

Therefore, for the reasons set forth, *supra,* we will grant Defendants' Motion for Summary Judgment in all respects and deny Plaintiffs' Motion for Partial Summary Judgment as to Liability.[36]

---

sary to act upon plaintiffs' outstanding Interrogatories and Supplemental Interrogatories. The Answers to said Interrogatories could in no wise change the result of this case.